155 So.2d 776 (1963)
SEARS, ROEBUCK & COMPANY et al., Plaintiffs and Appellees,
v.
CITY OF ALEXANDRIA et al., Defendant and Appellant.
No. 867.
Court of Appeal of Louisiana, Third Circuit.
July 15, 1963.
Rehearing Denied September 3, 1963.
*777 J. B. Nachman, Alexandria, for defendant-appellant.
Gist, Murchison & Gist, by D. Cameron Murchison, Provosty, McSween, Sadler & Scott, by LeDoux R. Provosty, Alexandria, for plaintiffs-appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This suit involves the validity of a zoning ordinance. The plaintiff landowners, Mr. and Mrs. E. C. Bethard and Mr. and Mrs. Herbie K. Smith, entered into a contract to sell two lots in the City of Alexandria to the plaintiff, Sears, Roebuck & Company, under the condition that a declaratory judgment be secured holding valid a zoning ordinance which would allow the use of said property for an off street parking lot. Plaintiffs filed this suit for declaratory judgment naming as defendants the City of Alexandria and Mr. Alex C. Lowther, the owner of adjacent property. The district judge held the zoning ordinance valid. Defendants appealed.
The facts show that in 1956 the City of Alexandria adopted a comprehensive zoning ordinance, as authorized by Act 240 of 1926 of the Louisiana Legislature (now LSA-R.S. 33:4721 et seq.). This 1956 ordinance established on the west side of Bolton Avenue, for its entire length of many blocks, a commercial zone 150 feet in depth. It likewise established, to the west of and abutting said commercial zone, a large "A Residence District". Thereafter this ordinance was amended so as to allow permits for parking lots in said residential area, where the premises abut upon and lay adjacent to the commercial district, subject to the condition that no parking lot should extend more than 270 feet back from the commercial zone (i. e. 420 feet back from Bolton Avenue) and in no event beyond the block in which is located the commercial zone.
After this amendment was adopted, Sears, Roebuck & Company built a large retail merchandise store fronting on the west side of Bolton Avenue with a large off street parking lot in the rear, the property extending back 410 feet from Bolton Avenue and being bound on one side by White Street, on the other side by Albert Street, and in the rear by property of the defendant, Alex C. Lowther.
*778 However, it soon became apparent that the Sears, Roebuck & Company parking lot was not sufficient for its customers and approximately 200 employees, particularly on Saturdays, Thursday evenings and during the 30-day period before Christmas, when the business volume was at its peak. As a consequence, during these peak business periods, the Sears customers and employees parked on Albert Street and on White Street for a considerable distance back into the residential area. The home owners on White and Albert Streets began to make complaints to the Alexandria City Police Department about this excessive parking of vehicles in front of their residences and the blocking of their driveways.
Other factors contribute to the heavy traffic congestion in the area. Bolton Avennue, on which the Sears, Roebuck & Company store faces, is a main traffic artery. It is a part of three state highway routes and has a traffic count of 10,000 to 12,000 vehicles per day in the area in question. A. B. F. Goodrich Tire Company Store is located on Bolton across Albert Street from the Sears Store. Behind that, an 8-unit apartment building, owned by a Baptist church is located on Albert Street across from the Sears, Roebuck & Company property. A large Episcopal church is diagonally across Bolton Avenue from the Sears store. A filling station, a used car lot and several small store buildings are across Bolton Avenue from the Sears building. A Conoco filling station is on the corner of Bolton and White Streets. A doctor's office is on White Street across from the Sears property. In addition to the above described establishments, which are immediately adjacent to the Sears property, the evidence shows that on Bolton Avenue for many blocks in both directions from the Sears property, there are many stores, filling stations and other commercial properties which cause traffic congestion in the area. Commercial development on Bolton Avenue is increasing. As a consequence, the commercial zone along Bolton Avenue is spreading back into the old residential areas in several locations.
As early as 1958, Sears, Roebuck & Company, on receiving complaints from the Mayor of the City of Alexandria, as to this parking and traffic problem, began to investigate the possibility of securing additional off street parking lots for its customers and employees. The policy of Sears, Roebuck & Company was to obtain additional off street parking facilities within the same block as the retail store establishment and as close thereto as possible. Parking lots across a street or highway from the store were not considered desirable. Mr. Dick Fletcher, who investigated for Sears the acquisition of additional off street parking facilities, testified that he considered several pieces of property in the immediate vicinity from the point of view of sufficient size, price and location. The evidence shows that Sears negotiated with the defendant, Mr. Alex C. Lowther, who owns a strip of land about 70 feet in width, abutting the existing Sears parking lot and running through the entire block from Albert Street to White Street. On this property is located Mr. Lowther's home and three large buildings containing 18 efficiency apartments. Sears and Mr. Lowther were unable to agree on a price. The next properties beyond Mr. Lowther's tract belong to the Bethards and the Smiths, plaintiffs in this suit. The Smiths' property fronts 60 feet on White Street and the Bethards' property 60 feet on Albert Street. These two properties abut each other in the rear so that they would afford a parking lot 60 feet by approximately 332 feet running through the entire block from Albert Street to White Street, but such a lot would be separated from the existing Sears parking lot by the intervening Lowther property.
Sears decided to try to buy the Bethard and Smith properties for use as a parking lot. The parties reached an agreement as to price, but since the property was in the "A Residence District", the zoning ordinance *779 had to be amended in order for Sears to use the property for off street parking.
On April 27, 1959, the Commission Council of Alexandria amended the existing zoning ordinance so as to provide "that the premises of Mrs. Lucille C. Smith and E. C. Bethard of 1734 White Street and 1845 Albert Street, being respectively Lots B and C * * * be rezoned for the limited purposes of permitting off street parking * * *." After this amendment to the ordinance was adopted, it was discovered that the Smith and Bethard properties still could not be used for off street parking lots, because the ordinance still contained the provision, as stated above, that no residential property could be used for parking unless it abutted upon a commercial zone.
Finally, on November 6, 1961, the Commission Council adopted the zoning ordinance amendment in question here. This amendment increased from 270 feet to 400 feet the area which could be used for parking lots, from the north side of White to the south side of Jackson Street, (the next street north of and parallel to Albert Street) and removed the requirement that any property in this 400-foot strip had to abut upon the 150-foot commercial zone. This added another strip of land 130 feet wide and two blocks long to the area zoned for parking lots and included the Bethard and Smith properties as well as the Lowther property and a 130-foot strip running through the next block. This entire ordinance, adopted November 6, 1961, is relevant to the issues of this case and reads as follows:
"WHEREAS, an increase in commercial development in the area west of Bolton Avenue between White Street and Jackson Street has caused a congestion of traffic which has created a condition that is hazardous and resulted in a situation that deprives the owners of homes in the vicinity of access to their property and interferes generally with their comfort and convenience; and
"WHEREAS, the situation can be alleviated and the flow of traffic facilitated by making available for off street parking more property in the affected area; and
"WHEREAS, considerations of public safety, comfort and the general welfare dictate that the pertinent zoning laws be modified to accomplish this objective; now, therefore
"SECTION I. BE IT ORDAINED BY THE COUNCIL OF THE CITY OF ALEXANDRIA, LOUISIANA, in legal session convened, that the recommendations made to the City Council by the Zoning Commission on October 2, 1961 relative to the application of J. E. Richardson and others be approved by eliminating the requirement in Ordinance No. 11 of 1961 that premises used for parking lots in the area involved must abut upon and be adjacent to a commercial district.
"SECTION II. BE IT ACCORDINGLY ORDAINED, that Paragraph (6) of Sub-Section (a) of Section 28-3 of Chapter 28 of the Code of Ordinances of the City of Alexandria be amended to read as follows:"
"(6) That no such parking lot shall extend more than 270' back of the commercial zone, and in no event shall it extend beyond the block in which the commercial zone is located, provided that on the west side of Bolton Avenue in the area extending from the north side of White Street to the south side of Jackson Street, such parking lot may be located not more than 400' back of the commercial zone; and provided further that in said area it shall not be necessary that the parking lot abut upon and be adjacent to a commercial district."
The record reflects that the Smiths, the Bethards, Mr. J. E. Richardson and other owners of residential property in the area petitioned for and sought the approval of *780 the above quoted amending ordinance and that the only opposition there was from the defendant, Mr. A. C. Lowther.
Before discussing the specific issues, we deem it appropriate to state the general principles of law involved. First, it is not disputed that the sole authority of the City of Alexandria to adopt and amend zoning ordinances is pursuant to LSA-R.S. 33:4721 et seq. (formerly Act 240 of 1926). Pertinent here are the following portions of these statutory provisions:
"33.4722. Creation of districts; uniform regulations within district
"For any or all of these purposes the governing authority may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes; and within the districts it may regulate and restrict the erection, construction, alteration or use of buildings, structures, or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations of one district may differ from those in other districts. * * *"
"33:4723. Purpose of regulations
"The regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the public streets, secure safety from fire, promote health and the general welfare, provide adequate light and air, avoid undue concentration of population, and facilitate adequate transportation, water supply, sewerage, schools, parks, and other public requirements. The regulations shall be made with reasonable consideration of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout the municipality."
"33:4725. Amendment of regulations
"The regulations, restrictions, and boundaries may, from time to time, be amended, supplemented, changed, modified or repealed. * * *"
Another pertinent general principle of law is that zoning ordinances, adopted in accordance with the procedure set up in the enabling statute, are presumed to have been adopted by the municipal authorities for valid purposes and their discretion will not be interfered with by the courts, unless it is clearly shown that the ordinance is arbitrary, unreasonable and in violation of the enabling statute. Archer v. City of Shreveport, 85 So.2d 337 (2nd Cir.App.1956); State ex rel. Dema Realty Co. v. McDonald, 168 La. 172, 121 So. 613; State ex rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440, 33 A.L.R. 260; 58 Am.Jur. 949 Verbo Zoning, Section 16. The burden is always upon the one assailing the zoning ordinance to overcome this presumption of validity. The court will uphold the ordinance unless it is clearly shown to be incompatible with the enabling legislative act or the constitution. Doubtful cases are decided in favor of the validity of the zoning law.
Passing now to the specific issues in this case, we understand defendant Lowther's principal contention to be that the ordinance in question constitutes illegal spot zoning in violation of the provisions of LSA-R.S. 33:4722 that the "regulations shall be uniform for * * * each district, * * *" and likewise in violation of the provisions of LSA-R.S. 33:4723 that the zoning ordinance "shall be * * * in accordance with a comprehensive plan * * *."
Defendant cites McCauley v. Albert E. Briede & Son, 231 La. 36, 90 So.2d 78 and Gaudet v. Economical Super Market, Inc., 237 La. 1082, 112 So.2d 720, as well as several cases from other states holding spot zoning ordinances to be illegal under certain circumstances. As summarizing *781 this jurisprudence defendant cites 101 C. J.S. Verbo Zoning, § 34, pp. 741-742 which reads as follows:
"Spot zoning is an attempt to wrench a single lot from its environment and give it a new rating that disturbs the tenor of the neighborhood, and which affects only the use of a particular piece of property or a small group of adjoining properties and is not related to the general plan for the community as a whole, but is primarily for the private interest of the owner of the property so zoned; and it is the very antithesis of planned zoning. It has generally been held that spot zoning is improper, and that one or two building lots may not be marked off into a separate district or zone and benefited by peculiar advantages or subjected to peculiar burdens not applicable to adjoining similar lands.
"It appears, however, that so-called `spot zoning' is not illegal in all cases, and whether it is so depends on the particular facts of the case, and on whether the municipality's action is properly related to the public health, safety, morals, and general welfare, designed to serve the best interest of the community as a whole, and in accordance with a comprehensive zoning plan. The mere fact that an ordinance creates numerous small zones indiscriminately scattered throughout the city, frequently consisting of only one lot, does not render it invalid, and a mere allegation that a certain order constitutes spot zoning does not necessarily make the order illegal.
"Whether a zoning ordinance is invalid as an entirety in that it is merely spot zoning depends on more than the size of the `spot', although the size is an important consideration; and, where it does not appear that there is a singling out of one lot for treatment different from that accorded to similar surrounding land indistinguishable from it in character, such spot zoning is not illegal."
A substantially similar definition of spot zoning is found in 58 Am.Jur. 965-967 Verbo Zoning, Section 39. Under these authorities and the cases cited therein it is apparent that all so-called "spot zoning" is not illegal.
In the annotation found in 51 A.L.R.2d 263 at pages 266-267, we find a summary of the various factors and circumstances which have been considered by the courts in determining whether spot zoning ordinances are invalid. We believe that a discussion of these factors, as related to the facts of the instant case, will answer all of the arguments made by defendant, keeping in mind that there is a strong presumption of validity in favor of the ordinance and our purpose is only to determine whether there was a substantial basis or reason for the action taken by the City Council.
The first test (as listed in 51 A.L.R. 2d at page 266) is whether the "spot" is inherently distinguishable from other property in the A Residence District, to the extent that it is no longer suitable for residential purposes. The record shows that although the "spot" is not inherently distinguishable from the other property in the residential district, in the sense that it is occupied by other than residential buildings, it is different in the sense that it is now near the edge of the spreading commercial zone along Bolton Avenue and is now in demand for parking lots connected with the commercial zone. The properties reclassified may not now be absolutely unsuitable for continued residential use but they have become less suitable for residential use and more suitable for commercial use.
The next listed factor is whether the "spot" reclassified, or adjoining land, is subject to the nonconforming use. In this case the spot reclassified, i. e., the *782 130-foot strip, including the Lowther property as well as the Smith and Bethard properties, will now be available for the same use as the adjoining Sears, Roebuck parking lot. This is not a new zone but simply the extension of an existing zone which can be used for off street parking purposes.
The next test listed is whether the "spot" created is arbitrarily discriminatory, i. e., was it given special advantages over adjoining similar property, without regard to the public welfare. Here again is applicable the fact that this 130-foot strip which was added to the zone available for parking is adjacent to an area already available for parking under the existing ordinance and therefore more suited for this purpose than other residential property located at a greater distance from the commercial zone. We cannot say that the city officials have abused their discretion in this regard.
The next factor listed, and perhaps the most important in this case, is whether the ordinance was enacted in pursuance of a comprehensive zoning plan, reasonably designed to promote the general welfare or other statutory objectives. One of the leading cases on this issue is Cassel v. Mayor and City Council of Baltimore, 195 Md. 348, 73 A.2d 486, cited by both plaintiffs and defendant in the instant case and quoted at length by the trial judge in his carefully considered written opinion. In the Cassel case, an amending ordinance reclassified one lot in a residential district from "residential" to "first commercial" for the purpose of permitting the owner to conduct a funeral home. The court noted that there were already three other funeral homes within a radius of 10 blocks and that there was no need for an additional funeral home to serve the area and held that the ordinance in question was adopted solely for the purpose of benefiting the owner of the lot and had no reasonable relationship to the general welfare. The court pointed out however, that "* * * the City Council has the power to make an exception to the Zoning Ordinance to relieve a certain lot from a restriction applicable to the use district where the exception is required either by the peculiar conditions of the lot or by the public good."
We think the instant case is very similar to Archer v. City of Shreveport, 85 So.2d 337 (2nd Cir.App.1956) where the city adopted an ordinance rezoning 10 lots from "A Residential" to "Commercial" for the purpose of allowing the construction of a shopping center. In holding that the ordinance was not arbitrary but on the other hand was shown to have a substantial relationship to the public welfare, the court noted that the mayor of the city had received complaints concerning the lack of shopping facilities in this large and growing residential area and that it was entirely reasonable for the city council to conclude that one large centrally located shopping district was preferable to scattered commercial locations in the residential zone.
The next factor suggested in the annotation in 51 A.L.R.2d at page 267 is whether the ordinance was reasonably designed to promote the general welfare or other objectives specified in the enabling statutes, rather than merely to benefit particular property owners. In the instant case the ordinance will benefit the Bethards and Smiths by allowing them to sell their property to Sears, Roebuck & Company, but this is not the sole purpose the ordinance will serve. The additional parking facilities afforded by the Smith and Bethard properties, as well as the other properties in the newly created zone, will unquestionably help to alleviate the traffic and parking problem. Additional off street parking will lessen the congestion on the streets, thus decreasing the traffic hazard for the public, as well as alleviating the situation complained of by the owners of homes in the vicinity with reference to excessive parking in front of their homes and driveways. *783 These are the very reasons for the ordinance stated by the city council in the ordinance itself and we think they are shown to be reasonably related to the general welfare.
The next suggested test is whether the ordinance complies with the statutory requirement that reasonable consideration be given to the character of the district with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the municipality. See LSA-R.S. 33:4723. It is the contention of Mr. Lowther that his dwelling and apartment buildings will be seriously reduced in value, principally because of the heat and dust from the new parking lot. As noted above, the existing Sears parking lot is already located on one side of these apartment buildings and the new parking lot will be located on the other side. We have only the testimony of Mr. Lowther himself that the value of his property will be reduced by the new parking lot, but even assuming, for the sake of argument, that this is true, we do not think that this alone is grounds for our holding that the Commission Council has acted in an arbitrary and unreasonable manner in adopting the ordinance in question. As has been pointed out above, this is not a new commercial parking lot zone, created as an island in the middle of a large and expensive residential area, but on the contrary is simply an extension of an existing parking lot zone. Mr. Lowther's apartment buildings already abut the existing Sears parking lot. The commercial area is expanding into this old residential area and as a consequence the residential properties on the edge of the commercial zone may be becoming less valuable for residential use and more valuable for commercial use. Actually, it can be reasonably argued that the ordinance allowing the use of these properties for off street parking will help to conserve the value of the private residences along White and Albert Streets where the objectionable parking situation exists. Under all of these circumstances we cannot hold that the Commission Council has acted arbitrarily or unreasonably in disregard of the value of buildings in the district.
We think the trial judge, in his well considered written opinion, has correctly summarized the issues of this case in the following portion of his opinion which we adopt as our own:
"Specifically, the question to be resolved is whether or not, under all the surrounding facts and circumstances, the contested ordinance effects unlawful spot zoning.
"The record establishes beyond question that the series of ordinances involved were passed for the purpose of permitting Sears, Roebuck & Company to construct a parking lot on the Smith and Bethard properties, the last ordinance, however, providing that additional property in the block between Albert and Jackson Streets may be utilized for off-street parking. In addition to the private advantage to be gained by this Company if the lot be constructed we can assume that the Smiths and Bethards will profit by the sale of their properties. In such a case, with no other facts and circumstances to consider, we would be confronted with a pure and simple example of unlawful spot zoning.
"But there are other facts and circumstances to consider. Because of the inadequacy of the existing Sears lot on-street parking in the area of the store has produced traffic problems. These problems prompted complaints to the city officials by residents of White and Albert Streets, and the city officials, apparently with no solution of their own to offer, passed the complaints on to the Sears Company, presumptively for the purpose of encouraging it to increase its parking facilities. The solution envisioned by the company was to extend its present *784 parking lot onto the Lowther, Smith and Bethard properties. Inasmuch as the Lowther property has not been obtained it has been omitted from the plan, the omission being allowed for in the ordinance under attack.
"Based on these facts the City Council, in the preamble of the contested ordinance, has stated its findings relative to the undesirable traffic situation in the area of the Sears store and the means whereby the same can be alleviated.
"The conclusion, then, is that Ordinance Number 20-1961 is neither unreasonable, discriminatory nor arbitrary; that it was not enacted for the purpose of securing personal gain to the Smiths and Bethards, but, on the contrary, to remedy undesirable traffic conditions and it, thereby, has a real and substantial relation to the public welfare."
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant, Mr. Alex C. Lowther.
Affirmed.

On Application for Rehearing
En Banc. Rehearing denied.