348 So.2d 143 (1977)
Herman HARDY et al., Plaintiffs-Appellees,
v.
MAYOR AND BOARD OF ALDERMEN, CITY OF EUNICE, Louisiana, et al., Defendants-Appellants.
No. 5947.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1977.
Rehearing Denied August 1, 1977.
Writ Refused October 26, 1977.
*145 Pucheu & Pucheu, by Jacque B. Pucheu, Sr., Eunice, Tate & McManus, by Kearney Tate, Eunice, for defendants-appellants.
Young & Burson, by I. Jackson Burson, Eunice, for plaintiffs-appellees.
Before HOOD, CULPEPPER and STOKER, JJ.
HOOD, Judge.
Mr. and Mrs. Herman Hardy, and several of their neighbors, instituted this action seeking to have an ordinance of the City of Eunice, which rezones a city lot, decreed to be invalid. The defendants are the Eunice Planning and Zoning Commission, the chairman of that commission, and the Mayor and Board of Aldermen of the City of Eunice. An intervention was filed by Frank Johnson, the present owner of the lot which the ordinance purports to rezone. Judgment was rendered by the trial court in favor of plaintiffs "nullifying and abrogating" the above ordinance. Defendants and intervenor appealed.
A number of issues are presented, the principal ones being (1) whether the rezoning ordinance sought to be annulled is invalid as constituting illegal "spot" zoning, and (2) whether the governing authority of the City of Eunice acted arbitrarily or unreasonably in making that zoning change.
The only property which was rezoned by the ordinance which plaintiffs seek to annul is Lot 12 of Block 90, of the Fuselier and Lewis Addition to the City of Eunice (referred to herein simply as "Lot 12"). Block 90 of that addition is bounded on the north by Laurel Avenue (U.S. Highway 190), one of the principal thoroughfares which runs through the City of Eunice. Block 90 contains a total of 16 lots, eight of them being in the north half of the block and eight of them being in the south half of it. Lot 12 is located in the southeast corner of Block 90. It is a relatively small lot, having a frontage of approximately 142 feet on Cane Street, by a depth of about 47 feet.
The City of Eunice adopted zoning regulations originally in 1954, but a new comprehensive zoning ordinance, identified as Ordinance No. 6-71, was adopted by the Mayor and Board of Aldermen of that city on June 29, 1971. Under the 1971 comprehensive zoning ordinance, property located on each side of Laurel Avenue, to a depth of about 150 feet, was included in an area which is zoned as a B-2 (highway business) District. The north half of Block 90 of the above addition was included in that B-2 District. A large area, including several blocks located immediately south of and *146 adjacent to the above B-2 District, was placed in an area which is designated as an R-2 (residence) District. The south half of Block 90, including Lot 12, was put in the above R-2 District.
The following plat, which we prepared, shows the location of Lot 12 with reference to the above B-2 and R-2 Districts, as those districts existed on June 29, 1971, under Ordinance No. 6-71.

On September 14, 1971, the Mayor and Board of Aldermen of the City of Eunice adopted Ordinance No. 11-71, which rezoned or changed Lot 12 from an R-2 (residence) District to a B-1 (local shopping) District. After that ordinance was adopted, the north half of Block 90 remained in a B-2 (highway business) District. Lot 12 *147 was in a B-1 (local shopping) District, and the remainder of the south half of Block 90 was in an R-2 (residence) District.
On May 21, 1976, Reginald M. Ball, President of Ball's Fried Chicken, Inc., which corporation then owned Lot 12, submitted a letter to the Municipal Planning and Zoning Commission of the City of Eunice requesting that Lot 12 be rezoned or changed from an R-2 (residence) District to a B-2 (highway business) District. Actually, Lot 12 was in a B-1 District when that letter was submitted, and the application thus was incorrect in representing that it was then in an R-2 (residence) District. Pursuant to that application, however, the zoning commission caused the required notice to be published in a local newspaper, stating that the requested zoning change would be considered at a hearing scheduled to be held on June 24, 1976. The notice included the statement: "Intended use: Lounge." A hearing was held at the time shown in that notice, but no one appeared at that hearing to protest the application. The zoning commission thereupon recommended to the Mayor and Board of Aldermen of the City of Eunice that the request be granted.
At a meeting of the Mayor and Board of Aldermen of the City of Eunice, held on July 13, 1976, the recommendation of the zoning commission was considered, and the Mayor and Board of Aldermen on that date unanimously adopted an ordinance which provided that the subject property, Lot 12, be rezoned and changed "from R-2 to B-2." No one appeared at the meeting of the Mayor and Board of Aldermen to protest or object to the recommended zoning change. Immediately after that zoning ordinance was adopted, Frank Johnson, the intervenor in this suit, purchased the property from Ball's Fried Chicken, Inc., and he then moved a building on Lot 12 preparatory to opening a lounge at that location.
Under the provisions of the comprehensive zoning ordinance of the City of Eunice, property located in an R-2 (residence) District, or in a B-1 (local shopping) District, cannot be used for the purpose of operating a "lounge" or a "nightclub." Property located in a B-2 (highway business) District may be used for the operation of a lounge or a nightclub.
This suit was instituted on August 5, 1976. The principal reason which plaintiffs assign for objecting to the rezoning of Lot 12 is that they do not want that lot to be used for the operation of a lounge, bar or nightclub.
Frank Johnson intervened, alleging that he is the owner of the subject property and that he unites with defendants in resisting the claims of plaintiffs.
After trial, the trial judge concluded that the action of the Mayor and Board of Aldermen of the City of Eunice in rezoning Lot 12, changing it to a B-2 classification, amounted to a "reprehensible, illegal and unconstitutional attempted exercise of the police power," that it constituted "spot" zoning in violation of Article 6, Section 17, of the Louisiana Constitution, and that the ordinance rezoning Lot 12, adopted on July 13, 1976, thus is illegal and void. Judgment was rendered by the trial court "nullifying and abrogating" that ordinance. The appeal which is before us now was taken from that judgment.
Defendants and intervenor contend that the trial court erred in holding that the rezoning of Lot 12 constituted illegal spot zoning. They argue primarily that the Mayor and Board of Aldermen were not arbitrary or unreasonable in making this zoning change, and that the court should not substitute its judgment for that of the governing authority of the municipality as to the wisdom of that amendment. Alternatively, defendants and intervenor argue that plaintiffs are estopped from challenging the validity of the ordinance which changes the zoning classification of that lot.
The authority of the Mayor and Board of Aldermen of the City of Eunice to adopt and amend zoning regulations for that municipality is derived from the police power which is vested in that body. The procedures required for adopting and amending zoning regulations are set out in LSA-R.S. 33:4721, et seq.
*148 Zoning ordinances adopted in accordance with the procedures set out in the enabling statutes are presumed to have been adopted by the municipal authorities for valid purposes. All such ordinances are presumed to be valid, and the burden is on the party attacking a zoning ordinance to overcome this presumption of validity. The court will uphold the ordinance unless it is clearly shown that the action of the governing authority was arbitrary or unreasonable, or that the action taken violated a provision of the constitution or of the enabling statutes. Doubtful cases will be decided in favor of the validity of the zoning law. Sears, Roebuck & Company v. City of Alexandria, 155 So.2d 776 (La.App. 3 Cir. 1963); Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1974).
A court will not substitute its views for those of the municipal governing body as to the wisdom of or the need for a change in the zoning regulations, except when it appears that there has been an abuse of discretion or an excessive use of power. The exercise of its police power by a municipal governing authority in establishing or amending zoning regulations will not be upheld, if it is shown that there has been an abuse of discretion or the excessive use of power, or that the action taken was arbitrary or unreasonable, or that it bears no relation to the health, safety or general welfare of the public. Four States Realty Co., Inc. v. City of Baton Rouge, supra; Meyers v. City of Baton Rouge, 185 So.2d 278 (La.App. 1 Cir. 1966).
With these general rules in mind, we turn now to the specific issues presented in the instant suit.

Illegal Spot Zoning
The trial judge held that the rezoning of Lot 12 from a B-1 to a B-2 classification constituted an arbitrary and unreasonable exercise of the police power of the governing body of the City of Eunice, that it amounted to "spot zoning," and that the ordinance purporting to make that change was unconstitutional and invalid. In making that determination, the trial court relied largely on Four States Realty Co., supra, and Dufau v. Parish of Jefferson, 200 So.2d 335 (La.App. 4 Cir. 1967).
"Spot zoning" is the singling out of a small parcel of land for a use classification which is different from that of the surrounding area, usually for the benefit of the owner of that parcel, or for the benefit of the owner of some other property in that area, and to the detriment of other owners. To constitute spot zoning there must be a change in the zoning classification applicable only to a relatively small area, and that change must be out of harmony with the comprehensive zoning plan for the community as a whole. Sears, Roebuck & Company v. City of Alexandria, supra; 51 A.L. R.2d, Section 263, page 192; 101 C.J.S. Zoning § 34, page 741; 82 Am.Jur.2d, Zoning and Planning, Section 76, page 514.
In Four States Realty Co., supra, one of the cases relied on by the trial court, our Supreme Court said with reference to spot zoning that:
"* * * However, rezoning on piecemeal or spot basis is highly suspect. Generally, property owners may rely upon the previous exercise of police power in zoning, expecting that changes in zoning will only be made so as to affect vested property interests when the change is required to assure the public welfare. A city purporting to act under its police powers cannot create in a large area of property zoned in one classification an island of one parcel of land relegated to another zoning classification when no rational reason exists for such a separate classification."
In that case, Four States Realty Co., supra, the City Council of Baton Rouge adopted an ordinance rezoning three lots in the central business district of Baton Rouge from a C-5 (commercial) to a C-4 (highway commercial) classification. For many years those lots had been included in a large zoning district, C-5, which permitted many business enterprises, including the construction and operation of a bus station. Plaintiff bought those three lots for the purpose *149 of using them for the operation of a bus station. After it acquired the subject lots, however, other property owners in that vicinity applied to the City Council to have those three lots changed to a C-4 (highway commercial) classification, which change would make it impractical, if not impossible, for the lots to be used for the intended purpose. No other property within an 18-square mile area around these three lots was zoned C-4, and the rezoning of those lots thus created a very small island in the large C-5 (commercial) District. The Supreme Court found that the purpose of the change of classification was to prevent plaintiff from establishing a bus station on the above lots, that the rezoning of those lots constituted spot zoning and was contrary to the long-term comprehensive zoning plan for the community, that the action of the City Council in rezoning those lots was "clearly arbitrary and capricious," and that the ordinance thus was invalid.
In Dufau, supra, the other case relied on by the trial court, the Jefferson Parish Council adopted an ordinance in 1960 zoning an entire square, containing 32 lots, as "commercial" property. Six years later at least 13 of those lots were being used for commercial purposes. In 1966 the Parish Council adopted another ordinance changing the entire square from a "commercial" to a "residential" classification. The owners of lots which were not being used for commercial purposes sued to annul the 1966 ordinance on the ground that it was discriminatory. The reviewing court, affirming the trial court, found that the 1966 change in the zoning regulation rendered the plaintiffs' property completely valueless and unsalable as residential sites, since it was surrounded by commercial property. The court held, therefore, that the ordinance making the change was invalid, as being unreasonable and discriminatory.
We do not feel that Four States Realty Co., or Dufau, both supra, are applicable here because of the material differences in the facts of the cases. In the instant suit, Lot 12 lies adjacent to a B-2 (highway business) District, and the amendment merely extends or enlarges that district. The change does not single out Lot 12 and give it a particular zoning classification different from that of the surrounding property. It does not create an "island" in a large commercial district. The ordinance merely changes the zoning classification of that lot to conform to the area which abuts it on the north. There is no showing that the change was made to discriminate against, or to favor, the owner of a particular parcel of property. And, there is nothing in the evidence to indicate that the value of any other property in that area will be decreased by the rezoning of Lot 12.
The issues presented in Sears, Roebuck & Company, supra, are similar to those which are before us here. In that case, the Commission Council of Alexandria adopted an ordinance changing the zoning classification of a small strip of land from "residential" to "commercial," so that it could be used for a parking lot. The subject strip of land was located adjacent to an existing parking lot, zoned for commercial use, and the effect of the change was to permit the enlargement of the existing parking lot to include a small strip which formerly had been zoned for residential purposes. We held that the rezoning of that lot was not arbitrary, unreasonable or discriminatory, that it did not constitute "spot zoning," and that the ordinance making that change was valid.
It is possible that Ordinance No. 11-71, adopted by the governing body of the City of Eunice on September 14, 1971, would have been vulnerable to a timely attack on the ground that it constituted spot zoning, since it changed Lot 12 from a residence classification to that of B-1 (local shopping). There was no other property in that entire area which was classified B-1, and the September, 1971, change thus singled out Lot 12, giving it a classification different from that of the surrounding area, thus creating an island consisting of one parcel of land.
The ordinance which is under attack here, adopted on July 13, 1976, changes the classification of Lot 12 so that it now conforms *150 to the classification of an adjoining area. It no longer forms an island of one parcel of land in an area which is zoned for other uses. The judgment rendered by the trial court, if allowed to stand, would have the effect of returning Lot 12 to its former B-1 classification, and allowing it to continue to be an island in a large area which is zoned for other uses.
We have concluded that the action taken by the Mayor and Board of Aldermen of the City of Eunice on July 13, 1976, changing Lot 12 to a B-2 classification, did not constitute illegal spot zoning. There is no merit to plaintiffs' argument, therefore, that the ordinance making that change is invalid, at least on that ground.

Arbitrary Action by Governing Authority
Plaintiffs contend, alternatively, that the action of the governing authority of the City of Eunice in changing Lot 12 from a B-1 to a B-2 zoning classification, on July 13, 1976, was arbitrary, unreasonable and discriminatory. They argue that there is no need for this change in the comprehensive zoning plan of the City of Eunice, that there is no "scarcity of saloons in Eunice," that "the residents of the South Cane area have not traditionally enjoyed a wide choice of residential sites," and that the ordinance being attacked here deprives them of "their small enclave of relative serenity" in that part of the city.
The evidence shows that a substantial part of Block 90 of the Fuselier and Lewis Addition to the City of Eunice has been, and is being, used for the operation of bars, lounges or nightclubs. For years, the eight lots which comprise the north half of that block have been in a B-2 zoning district, where those types of businesses are permitted to operate. Bars, lounges and nightclubs are located on all of the lots on the west side of Block 90, facing on East Street. A large nightclub, known as the Morocco, is located on Lot 1, and bars or lounges are located on Lots 2 and 3, despite the fact that those three lots are zoned R-2, and thus restricted for residential use. An establishment, known as the Tip Top Lounge, is located on the southeast corner of the intersection of North Street and East Street, just south of the Morocco nightclub. The evidence shows, in fact, that the strip of land which is located on the east side of East Street, facing on that street, and extending a substantial distance south from Laurel Avenue, is known as "The Front," and that there are numerous bars, lounges and nightclubs in that area, although much of that property is zoned R-2, for residential use.
Lots 13, 14 and 15 are the only lots in Block 90 which are being used for residential purposes. Lot 16 is vacant. The testimony of the residents of that area indicate that none of the lots in that block are ideally suited for residential purposes, largely because of their close proximity of so many bars and nightclubs. Mrs. Herman Hardy, one of the original petitioners, testified that the residents in that area are regularly "subjected to noise," to "obscene language," to disrespect, and to "indecent exposure." Melvin Hardy who lives almost a block east of Lot 12, testified that he frequently is subjected to loud noises, sometimes until 4:00 A.M., and to "cursing, turning around in your driveway, busting bottles," and to "hollering." The residences of those witnesses are located at a greater distance from "The Front" than is Lot 12 or any other lot in Block 90. We find it difficult to reconcile the evidence with plaintiffs' argument that the changing of the zoning classification of Lot 12 will deprive plaintiffs of "their small enclave of relative serenity" in that part of town. The evidence does not convince us that the changing of Lot 12 to a B-2 classification will reduce the value of any of plaintiffs' homes, or that it will detract from the usefulness or desirability of any of those properties for residential purposes.
It is appropriate to observe here that the comprehensive zoning ordinance adopted for the City of Eunice provides for the continuation of non-conforming uses of land and/or structures. The evidence does not show how long the bars, lounges and nightclubs now located along the east side of *151 East Street have been in operation at those locations. We assume that all of those establishments were in existence when the zoning ordinance was adopted, and that the owners have the right under the ordinance to continue to use those parcels of land and structures for those purposes.
The establishment of zoning regulations is a legislative function, and in this instance that function was exercised by the governing body of the City of Eunice. The record does not show the reasons why that body changed the zoning classification of Lot 12, other than the fact that that action was recommended by the Municipal Planning and Zoning Commission and that no one objected to the proposed change. The evidence establishes other facts and circumstances, however, which tend to support defendants' argument that the governing body of the city did not act arbitrarily in changing the zoning of Lot 12. The record shows, for instance, that eleven of the sixteen lots in Block 90 have been and are being used for "highway business" purposes, including the operation of bars and nightclubs. We cannot say that the Mayor and Board of Aldermen acted arbitrarily in allowing one of the five remaining lots to be used for the same purpose, especially since that lot lies adjacent to the "highway business" district.
Another circumstance which we have considered is that Lot 12 was given a B-1 (local shopping) classification in 1971, and since that time the owner has been authorized to use that lot for many business purposes, although not for the operation of a nightclub. The establishing of a B-1 (local shopping) District, comprised only of Lot 12, created an island of that parcel of land between an R-2 District and a B-2 District, and we do not believe that the zoning authority can be said to have acted arbitrarily or unreasonably in changing the classification of that lot again so that it would no longer be an island, but would be included in one of the two large adjoining districts.
After reviewing the record, we have decided that the trial judge erred in holding that the Mayor and Board of Aldermen of the City of Eunice were arbitrary or unreasonable, or that they engaged in the excessive use of power, in changing Lot 12 from a B-1 to a B-2 classification.

Validity of Rezoning Petition
Plaintiffs contend that the application which was filed with the Municipal Planning and Zoning Commission to change the classification of Lot 12 was void ab initio, because of the failure of the applicant to submit a petition in accordance with the provisions of Section 13.01 of Ordinance No. 6-71 of the City of Eunice, which ordinance establishes a comprehensive zoning plan for that city.
Section 13.01 of the above ordinance provides that the Mayor and Board of Aldermen may amend or change the zoning regulations "on petition by property owners," provided that the petition is signed and acknowledged by the owners or agents of "not less than 50 percent of the area of land in which a change of classification is requested."
Plaintiffs argue primarily that the petition for a change in the classification of Lot 12 should have been signed by the owners of not less than 50 percent of the land "within the large R-2 area" which is located south of and adjacent to the subject lot. They argue, alternatively, that an analogy should be drawn between Section 13.01 of the above ordinance and LSA-R.S. 33:4725, and that through that analogy the "area of land" referred to in the ordinance should be interpreted to mean an area determined by lines drawn parallel to and 200 feet distant from the boundaries of the above R-2 District.
We think the requirement in Section 13.01 of the comprehensive zoning ordinance, to the effect that the petition for a change of classification must be signed by the owners of not less than 50 percent of the "area of land in which a change of classification is requested," means that the petition must be signed by the owners of 50 percent of the land in the zoning district in *152 which the property was located when the change was sought. In this instance, Lot 12 was in a district zoned and identified as a B-1 (local shopping) District. It was the only parcel of land in that district, and that lot thus was the only "area of land" in which a change of classification was requested. Ball's Fried Chicken, Inc., was the owner of Lot 12, and it thus was the owner of all of the property located in that B-1 District. The petition seeking a change in the classification of that particular lot was signed in behalf of that corporation by its president. We find that the petition was signed by the owner of 100 percent of the area of land in which the change of classification was requested.
LSA-R.S. 33:4725 provides a procedure for protesting or objecting to a proposed change in a zoning classification. The petition therein described is one which must be filed by a property owner who protests against the change, and not by one who seeks the change of classification as in the instant suit. We find no basis for analogy between that statute and Section 13.01 of the above ordinance.
We thus find no merit to either of the above arguments made by plaintiffs. Our conclusion is that there has been a compliance with the provisions of Section 13.01 of the comprehensive zoning ordinance.

Conflicting Provisions of Zoning Ordinance
Plaintiffs contend that the change in the zoning classification of Lot 12 is invalid because it purports to authorize the use of that lot in ways which conflict with other provisions of the comprehensive zoning ordinance.
They point out that Section 8.03 of that ordinance requires that the site of a B-2 business must contain at least 5,000 square feet, and they argue that an area that large is not available on Lot 12 after eliminating the square footage occupied by or required for the existing buildings on that lot. Section 2.02 provides that no more than one main building and its customary accessory buildings shall be erected on one lot, and plaintiffs argue that that prevents the owner of Lot 12 from erecting any other buildings on the lot, since two buildings are already on it. Sections 4.01 and 4.06 require the allowance of "off-street loading spaces" for some commercial structures, and plaintiffs contend that it would be impossible for the owner of Lot 12 to construct any additional commercial building on the lot and still comply with the above section of the ordinance. Section 1.03 provides that no amendments to the zoning classification shall become effective until after an entry to that effect has been made on the Official Zoning Map, and it is argued that no entry showing a change of classification of Lot 12 has been made on that map.
All of the above provisions relate to the manner in which property may be used after its zoning classification has been determined. The fact that the owner cannot or may not comply with some of those requirements does not render the change in the classification of Lot 12 invalid. The interested parties may resort to other procedures in an effort to obtain relief if the owners allow the property to be used in a way which violates the zoning regulations.
We find no merit to plaintiffs' argument that the action of the zoning authority in changing the classification of Lot 12 is unreasonable and invalid because of the cited provisions of the ordinance, even though the intervenor may have violated one or more of those provisions when he moved a building onto the subject lot.

Appointment of Board of Adjustment
Plaintiffs demand, among other things, that the judgment appealed from be reversed and that this case be remanded so that a Board of Adjustment can be appointed, and plaintiffs will be given the right to appeal to that board, all pursuant to the provisions of LSA-R.S. 33:4727 and Article 12 of the comprehensive zoning ordinance of the City of Eunice.
LSA-R.S. 33:4727 provides that a local legislative body may provide for the appointment of a Board of Adjustment to *153 hear and decide appeals from an order or decision of "an administrative official" in the enforcement of LSA-R.S. 33:4721 et seq., or of any ordinance adopted pursuant thereto. Section 12 of the zoning ordinance creates a Board of Adjustment, pursuant to the above statutory provisions, and it empowers that board to consider and rule on appeals from orders or decisions of the Building Inspector, or any other administrative official, in the carrying out or enforcement of any provisions of the ordinance. The ordinance authorizes the Board of Adjustment to consider a few other matters, but we find no provision in the statutes or in the ordinance which empowers the Board of Adjustment to consider or to rule on the validity of a change in the classification of property under the zoning ordinance.
In our opinion, there is no merit to plaintiffs' argument that they have the right to appeal the issue presented here to a Board of Adjustment.

Conclusion
Our conclusion is that the action taken by the governing authority of the City of Eunice on July 13, 1976, changing Lot 12 to a B-2 (highway business) zoning classification, is valid. The trial court erred, therefore, in decreeing the ordinance which effected that change to be invalid.
The judgment appealed from is reversed, and judgment is hereby rendered in favor of defendants and intervenor, and against plaintiffs, rejecting plaintiffs' demands and dismissing this suit. All costs of the suit and of this appeal are assessed to plaintiffs-appellees.
REVERSED AND RENDERED.