Dear Ms. LeBlanc:
You have requested, on behalf of the Ascension Parish Zoning Commission, an opinion from our office regarding whether re-zoning a thirty acre parcel of property zoned Residential Medium Intensity (RM) to High Intensity Commercial/Residential (CH) would constitute illegal spot zoning. In June, 1999, Ascension Parish adopted the Ascension Parish Development Code, dividing the parish into seven zoning districts. The property in question is located along Louisiana Highway 429 in an area zoned Residential Medium Intensity (RM). The property presently consists of several commercial entities, including a general store, a sporting good store, a florist, a hair and tan salon, a boudin processing plant, a United States Post Office, and a commercial crawfish/aquaculture business. These commercial activities all pre-date the adoption of zoning ordinance, and if non-conforming to the Residential Medium Intensity District, are allowed to continue pursuant to Section XX-310, a grandfather clause. The crawfish/aquaculture business appears to occupy two-thirds to three quarters of the thirty acre parcel.
On June 28, 1999 the parish received a request for a variance/re-zoning of the property from Medium Intensity Residential to High Intensity Commercial/Residential. It appears that the request for the variance/re-zoning is for the entire parcel, but that the only change in use will occur on that portion of the parcel presently being used as a crawfish/aquaculture business. The other businesses located on the parcel apparently would remain, and be located on the re-zoned property. According to the pre-hearing memorandum filed by the applicant, the crawfish/aquaculture business will be converted to a winery, vineyard, orchard, and distillery, wherein native wine and distilled spirits will be manufactured from locally grown fruit, berries, and grapes. The applicant plans on using the majority of this portion of the property to plant grapevines, muscadines, vines and native fruit trees and berries of different varieties. Buildings, sheds, and various other structures will be built to store, sell, and package the various products. The applicant hopes that at least 51% of the raw product used to produce the wine and distilled spirits will come from the fruits grown on the property. The remainder of the fruits needed to produce the wine will be imported. Maintaining a product in which at least 51% of the finished product is obtained from fermentation of fruits grown and produced in Louisiana allows the wine to be designated as a "Louisiana Native Wine" pursuant to The Louisiana Native Wine Law (La. R.S. 26:321 et seq.).
Pursuant to Section XX-208 of the Development Code, Medium Intensity Residential Districts are intended for the development of single family dwellings with commercial development limited to serving the needs of the neighboring residences. Commentary to this Section provides that large commercial developments are inappropriate for this district. Examples of commercial uses which are allowed in this zoning district are provided in Table A of the Code and include "barber and beauty shops", "bed 
breakfasts", "convenience food or general merchandise store with gas pumps", "dry cleaning pick-up stations", "florists, greenhouses, and nurseries", "mobile offices", "professional offices", and "restaurants". Additionally, agricultural uses are allowed in Medium Intensity Residential Districts. Section XX-305 provides that agricultural uses include farms, farm residence, orchards, and related activities, including raising livestock, horses, and poultry. The Code provides that "drive-in commercial businesses not elsewhere classified and "post offices" are restricted to High Intensity Commercial/Residential Districts.
Section XX-206 of the Development Code provides for High Intensity Commercial and Residential Districts. This district is characterized by the most intensive residential and commercial development. The commentary to this Section provides that the purpose of this district is to concentrate the most intensive residential and commercial development along the major arteries of the parish. This minimizes the infrastructure costs and manages public safety risks most appropriately. Examples of commercial uses which are allowed in this zoning district are also provided in Table A of the Code and include "adult businesses", "alcohol beverage outlets", "animal hospital and veterinarian offices", "auto and truck major repairs", "auto and truck sales", "banks", "barber and beauty shops", "bars and lounges", "bed and breakfasts", "convenient store general merchandise store with gas pumps", "drug stores", "dry cleaning pick up stations", "florists, greenhouses, nurseries", "funeral establishments", "gift shops", "kennels", "medical and dental clinics", "motels and hotels", "regional shopping centers", and "truck stops". As can be seen by comparing allowable uses in the High Intensity Commercial/Residential Districts with those allowed in the Medium Intensity Residential District, there are numerous commercial uses which are allowable in both districts. Uses, pertinent to your inquiry, not allowed in both districts, but only in High Intensity Commercial/Residential Districts are "post offices" and "drive-in commercial businesses not elsewhere classified".
Pursuant to Table A of the Code, it appears that several of the existing businesses located on the property are conforming uses in both the Medium Intensity Residential District and High Intensity Commercial/Residential District. These include the general store, beauty salon, and florist. The crawfish/aquaculture business appears to be an agricultural activity, which is also a conforming use in Medium Intensity Residential Districts, but not allowed in High Intensity Commercial Residential Districts. The post office, on the other hand, is a non-conforming use in Medium Intensity Residential District, but specifically allowed in High Intensity Commercial/Residential Districts. The sporting goods store appears to fall in the classification of a "drive-in commercial business not elsewhere classified," which is also a non-conforming use in Medium Intensity Residential Districts, but allowed in High Intensity Commercial/Residential Districts.
The boudin factory, which according to your letter, is a commercial enterprise preparing boudin. The boudin is packaged and sent out for sale to various stores. The product is also available for sale to the general public in the store, but it is not considered a restaurant. There is no specific listing in the Development Code for such a facility, but it appears to fall under Section XX-309 as a light industrial use, and is therefore a non-conforming use in Medium Intensity Residential Districts. Light industrial uses are allowed in High Intensity Commercial/Residential Districts. Even though the existing non-conforming uses are grandfathered into the Medium Intensity Residential District, all of the uses, with the exception of the crawfish/aquaculture business, would be conforming uses in High Intensity Commercial/Residential Districts. Pursuant to Table A of the Code, agricultural uses, in this case the crawfish/aquaculture business, are not permitted in High Intensity Commercial/Residential Districts.
The application for variance/re-zoning proposes to use the property for a "winery, vineyard, orchard, and distillery." This will include planting, growing, and harvesting fruits on the property as well as building a distillery to produce wine and distilled spirits. We believe that the planting, growing, and harvesting of fruits, as well as the associated buildings and sheds ancillary to such planting, growing, and harvesting are agricultural uses and are therefore conforming uses in Medium Intensity Residential Districts. Agricultural uses, though, are not an allowable use in High Intensity Commercial/Residential Districts. By re-zoning the property, the agricultural aspects of the vineyard would not be permitted.
In addition to planting, growing, and harvesting fruits from the property, the applicant plans on manufacturing wine and distilled spirits. The application provides that at least 51% of the wine and distilled spirits will consist of the fruits grown on the property. Up to 49% of the wines and distilled products will be made up of fruits imported onto the property. The commentary to Section XX-305, Agricultural Uses, provides that agricultural uses include all "purely agricultural uses". It does not include uses which may be accessory to agricultural, such as retail stores, or businesses which are supported by agriculture. Based upon this provision, we believe that manufacturing native wines and distilled spirits is not an agricultural activity, nor could it be considered another type of use which is conforming in Medium Intensity Residential Districts.
Non-conforming uses are only allowed through application of the grandfather clause, Section XX-310. Otherwise, the Code must be amended pursuant to Section XX-418, whereby property is re-zoned to a district in which the proposed use is a conforming use. Re-zoning does not allow for non-conforming uses. Rather, it changes the designation of the property to allow a use which is conforming to the re-zoned property, but which would be non-conforming under the prior designation. Re-zoning is allowed under the development code pursuant to Section XX-418. In part, this Section provides:
 (g) no proposal for zoning change or amendment affecting particular property or properties shall contain conditions, limitations or requirements not applicable to all other property in the district to which the particular property is proposed to be re-zoned.
Thus, pursuant to this provision, once re-zoned from Medium Intensity Residential to High Intensity Commercial/Residential, the property can be used for any use conforming to the High Intensity Commercial/Residential District, so long as the other provisions of the Code are complied with.
 "Spot zoning" has been described as follows:
 Spot zoning is an attempt to wrench a single lot from its environment and give it a new rating that disturbs the tenor of the neighborhood, and which affects only the use of a particular piece of property or a small group of adjoining properties and is not related to the general plan for the community as a whole, but is primarily for the private interest of the owner of the property so zoned; and it is the very antithesis of planned zoning. It has generally been held that spot zoning is improper, and that one or two building lots may not be marked off into a separate district or zone and benefited by peculiar advantages or subjected to peculiar burdens not applicable to adjoining similar lands.
 It appears, however, that so-called spot zoning is not illegal in all cases, and whether it is so depends on the particular facts of the case, and on whether the municipality's action is properly related to the public health, safety, morals, and general welfare, designed to serve the best interest of the community as a whole, and in accordance with a comprehensive zoning plan.
Sears, Roebuck and Company, et al v. City of Alexandria,155 So.2d 776 (La.App. 3 Cir., 1963), citing 101 C.J.S. Verbo Zoning, s. 34, pp. 741-742.
In Sears, the Court discussed six factors which are used to determine whether spot zoning ordinances are invalid. These are discussed as follows:
 (1) Whether the re-zoned property is inherently distinguishable from other property in the district, to the extent that it is no longer suitable for the purpose of that district.
This criterion looks at whether the property re-zoned to High Intensity Commercial/Residential is still suitable for the uses allowed in a Medium Intensity Residential District. The court in Sears discussed this criterion with respect to property near the edge of a spreading commercial zone. The court found that the property in this "edge" area, while not absolutely unsuitable for continued residential use, had become less suitable for residential use and was more suitable for commercial use. Thus, it appears that this factor deals with suitability of the property in relation to the district in which it is presently located as compared to the suitability of the property to the uses allowed in the re-zoned district. In your opinion request, the property contains several businesses which are conforming to a Medium Intensity Residential District, as well as a few that are not. Located to the east of the property is a residence, pasture land, and dog breeding business. The dog breeding business is probably considered a type of kennel, which would not be a conforming use to the Medium Intensity Residential District. South of the property is pasture land, used for raising cattle. West of the property is a wooded area and a public school. North of the property is a church and residential lots. Within one mile of the property, according to the memoranda in support of the re-zoning, is a bank, four-way Texaco, superette, feed store, Fisherman's One Stop, and a nursery. Except for the bank agriculture activities, which the code lists as non-conforming to Medium Intensity Districts, the businesses are conforming uses within a Medium Intensity Residential District. The majority of the uses of the property in the area appear to be conforming uses to the Medium Intensity Residential District. Only a few are not. These facts can be used to determine whether the property subject to the re-zoning request is less suitable as a use in a Medium Intensity Residential District and more suitable for High Intensity Commercial/Residential Districts.
 (2) Whether the re-zoned property, or adjoining land is subject to the non-conforming use.
In other words, is the re-zoning an extension of an existing adjacent zone. This criterion looks to whether the re-zoning is essentially being enveloped by an adjacent zone. Thus, the re-zoning does not create an island within an area within a different zoned category, but rather the boundary between two different zoned categories is moved, incorporating property which was previously in a different zoned category.
 (3) Whether the re-zoned property is arbitrarily discriminatory, in that it was given special advantages over adjoining similar property, without regard to the public welfare.
In discussing this criterion, the court in Sears compared suitability of the property proposed to be re-zoned with the suitability of other property located nearby. In other words is the property in question more suitable for re-zoning than the property located in other areas of the Medium Intensity Residential District. We believe this entails comparing the property in question with other parcels in the Medium Intensity Residential District. Factors which may be pertinent to this comparison include the types of uses near the parcel and the adequacy of the roads and infrastructure to handle increased traffic resulting from the vineyard and winery. With these factors in mind, the property in question can be compared to parcels located elsewhere to determine the suitability of the property for re-zoning.
 (4) Whether the re-zoning was enacted in pursuance of the comprehensive zoning plan, reasonably designed to promote the general welfare and objectives of the zoning ordinance.
This criterion looks to the need within the community for re-zoning this particular piece of property. This criterion looks to whether the re-zoning would benefit the welfare of the public. It looks to whether the community desires these types of non-conforming uses at that location and the number of other businesses nearby which provides the same type of services. If there is no general need for such commercial activity, or if there are similar commercial activities nearby, the re-zoning may be viewed as being accomplished solely for the benefit of the property owner with no reasonable relationship to the general welfare.
 (5) Whether the re-zoning was reasonably designed to promote the general welfare or other objectives specified in the development code, rather than merely to benefit particular property owners.
While obviously benefiting the owners of the lot requesting the re-zoning, we believe that this factor requires determining whether the results of the re-zoning will have a positive impact to the community and/or eliminate or alleviate existing problems in the area. For example, in Sears, the result of re-zoning certain parcels of property from residential to commercial would allow building parking lots which would alleviate existing traffic and parking problems. It was found by the court that the building of these parking lots would lessen the congestion on the streets, thus decreasing the traffic hazard for the public, as well as alleviating the situation complained of by the owners of homes in the vicinity to excessive parking in front of their homes and driveways. With respect to your opinion request, establishment of a vineyard could encourage increased tourism to the area and increase the tax receipts by the tourists purchasing products from the vineyard, as well as from nearby shops and restaurants. Alternatively, it may increase traffic to the area by people visiting the vineyard, and increase truck traffic moving goods to the vineyard as well as distribution of the produced wine and distilled spirits.
 (6) Whether the ordinance complies with the statutory requirement that reasonable consideration be given to the character of the district with a view to conserving the value of buildings and encouraging the most appropriate use of land.
We believe this criterion requires a determination of whether the facility to produce wine and distilled spirits would be the type of facility that would not detract from the character of the surrounding area. This, we believe, requires comparing the vineyard and distillery with the types of uses in the surrounding property in determining whether the vineyard and distillery would be inappropriate at that location when viewed with the surrounding area, thus detracting from the character of the surrounding property.
Local governments are provided broad powers to adopt regulations for land use, zoning and historic preservation. See La. Const. Art. 6, Section 17. Zoning is a legislative function, the authority from which flows from the police power of governmental bodies. As such, courts will not interfere with zoning decisions unless they are palpably erroneous and without any substantial relation to the public health, safety or general welfare. King v. Caddo Parish Commission, 97-1873 (La. 10/20/98), 719 So.2d 410.
Your request for an opinion whether re-zoning the property from Medium Intensity Residential to High Intensity Commercial/Residential would constitute illegal spot-zoning is essentially a question of fact. It is long standing policy in our office not to make factual determinations in answering requests for opinions. These determinations should be made by Ascension Department of Planning and Development and the Ascension Police Jury pursuant to the procedure listed in the Development Code. The framework provided above should assist you in arriving at a proper conclusion. See La. Attorney General Opinion No. 95-457.
Finally, we note that pursuant to Table A of the Code, agricultural uses are not allowed in High Intensity Commercial/Residential Districts. Thus, as discussed above, the agricultural aspects of the vineyard would not be allowed on the re-zoned property. On the other hand, it appears that the manufacturing of wines and distilled spirits is a non-conforming use in the present Medium Intensity Residential District, and which would not be allowed at that location without the property being re-zoned. The result is that under the present zoning designation only part of the vineyard facility is allowed. Re-zoning essentially reverses the situation, prohibiting that aspect of the vineyard which was allowed in the existing classification. One possible solution to this problem is to re-zone only that portion of the property on which the manufacturing facilities will be located. We can not provide an opinion of whether such re-zoning would meet the criteria listed above. These are factual determinations, which, as stated above, should be made by the Ascension Department of Planning and Development and the Ascension Parish Police Jury pursuant to the provision in the Development Code.
We trust the foregoing has been helpful. Should you have any further questions, please contact our office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: FREDERICK C. WHITROCK
Assistant Attorney General
RPI/FCW/crt
attachment *Page 1 
OPINION NUMBER 95-457
October 30, 1995
 174 — Zoning 71 — Municipalities
"Spot Zoning" is the singling out of a small parcel of land for use classification which is different from that of the surrounding area. Mayor Gregory N. Marcantel However, not all spot zoning is City of Jennings illegal. The Sears five-part P.O. Box 1249 analysis should be used in Jennings, Louisiana 70546 determining the validity of a spot zoning ordinance.