413 So.2d 1336 (1982)
CHRISTOPHER ESTATES, INC.
v.
PARISH OF EAST BATON ROUGE, City of Baton Rouge and the Planning Commission for the City of Baton Rouge and the Parish of East Baton Rouge.
No. 14748.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
*1337 Samuel A. Bacot, Curtis K. Stafford, Baton Rouge, for plaintiff-appellant Christopher Estates, Inc.
Stephen R. Wilson, Asst. Parish Atty., Baton Rouge, for defendant-appellee Parish of East Baton Rouge, City of Baton Rouge, Planning Commission for the City-Parish.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
LOTTINGER, Judge.
This is an action by plaintiff, Christopher Estates, Inc., for a mandatory injunction against the defendants, the Parish of East Baton Rouge, the City of Baton Rouge, and the Planning Commission for the City of Baton Rouge and the Parish of East Baton Rouge. From a judgment denying the injunction, plaintiff has appealed.
Suit arose when plaintiff submitted to the Planning Commission for preliminary approval a revised subdivision plat of the third filing for Forest Glen Subdivision in the northeastern part of East Baton Rouge Parish. The plat was a revision of two prior plats for the third filing of the subdivision which had been previously submitted and approved. The plat in question created lots with sixty feet of street frontage in the third filing, as opposed to lots with eighty feet of street frontage, which the Planning Commission had already approved.
The proposed plat received strenuous opposition from residents already living in the first and second filings of Forest Glen Subdivision. On July 7, 1980, after heated discussion at a public hearing conducted by the Planning Commission, the Commission refused to grant preliminary approval to the proposed plat. The Commission suggested as a compromise that plaintiff reduce the street frontage for lots in the third filing from eighty feet to seventy-five feet, rather *1338 than the sixty foot frontage submitted by plaintiff. The suggested compromise was disdained by the plaintiff, who filed the instant action. The basis of plaintiff's request for a mandatory injunction was that the proposed plat with sixty-foot frontages was well within the minimum requirement of fifty-foot frontages for residences in a rural (R) zone.

SPECIFICATION OF ERRORS
Plaintiff-appellant, Christopher Estates, Inc., argues that: the Planning Commission does not have the discretion to disapprove a plat which meets the requirements of all relevant statutes and ordinances and even if the Commission does have such discretion, it abused its discretion by acting arbitrarily, capriciously and in a discriminatory manner in failing to approve plaintiff's proposed plat.

I
We will discuss these issues in reverse order. Plaintiff-appellant argues that if the City-Parish Planning Commission does have discretion to disapprove the proposed plat, that the Commission abused its discretion by arbitrarily, capriciously, and discriminatorily failing to approve the plat as proposed.
This court stated in Schwing v. City of Baton Rouge, 249 So.2d 304, 308 (La.App. 1st Cir. 1971) writ denied 259 La. 770, 252 So.2d 667 (1971) that governing bodies have the legal constitutional right to adopt master plans for physical development in the interest of public health, safety, and morals, and that this is especially true when municipalities and similar governing units are empowered to take such action by the state, as is the case with La.R.S. 33:101 et seq. However, in forming the City-Parish Planning Commission, the City-Parish government of Baton Rouge created a structure of local government whose powers and functions remain subject to the laws and constitution of Louisiana, and subject to the laws and constitution of the United States. Accord: Old Jefferson Civic Association Inc. v. Planning Commission for the City of Baton Rouge and the Parish of East Baton Rouge, 364 So.2d 193, 195 (La.App. 1st Cir. 1978). The United States Supreme Court held in Village of Euclid, Ohio v. Ambler Realty Company, 272 U.S. 365, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926), and its progeny, that actions taken under a comprehensive land use regulatory ordinance are violative of due process if they are arbitrary, capricious, and unreasonable.
However, the burden of proof is on the landowner to show that the governing authority acted arbitrarily or without authority in refusing to approve a plan for a subdivision. State ex. rel Prats v. City Planning & Zoning Commission of the City of New Orleans, 59 So.2d 832 (Orl.La.App. 1952). There is a prima facie presumption of validity which attaches to acts of a duly constituted commission, Roy v. Kurtz, 357 So.2d 1354 (La.App. 4th Cir. 1978), writ ref. 359 So.2d 1307 (La.1978); First National Bank of Abbeville v. Sehrt, 246 So.2d 382 (La.App. 1st Cir. 1971), writ ref. 258 La. 909, 248 So.2d 334 (1971).
Evidence adduced at trial showed that the lots within the first and second filings of Forest Glen Subdivision generally have large street frontages, approximately from 90-150 feet. The third filing was to be an addendum to the first filing, with an extension of the main thoroughfare of the subdivision, Donnybrook Avenue, to run directly from the first filing through the third filing. The lots in the first filing immediately adjacent to the proposed third filing have street frontages of 166 feet, 150 feet, 150 feet, 150 feet, and 120 feet, respectively.
The original plat for the third filing contained lots with street frontages of 120 feet (except in curves and cul-de-sacs.) This plat received preliminary approval. Later, in connection with a proposed sale of the property to another developer, a second plat was drawn for the third filing, featuring street frontages of 80 feet. This plat was also given preliminary approval by the commission, although the proposed sale was never consummated. Ultimately, plaintiff presented the commission with a third plat for the third filing, with frontages of 60 *1339 feet (except for lots in curves and cul-de-sacs.) This plat was refused, and a compromise of seventy-five foot lots was suggested by the commission. The plaintiff then instituted the present action.
Various members of the Planning Commission testified at trial. They stated that the staff of the commission had recommended disapproval of the third plat, and that they had agreed with this recommendation. The reason given for disapproval was that the proposed third filing if adopted would interrupt the character of the development, inasmuch as lots with large street frontages would be immediately adjacent to lots with much smaller frontages. The commissioners also testified that the residents of the first and second filings voiced vocal opposition to the proposed plat, and had presented the commission with a petition of signatures of subdivision residents who opposed the third plat for the third filing.
The plaintiff, to prove that the actions of the commission were arbitrary and capricious, introduced the expert testimony of civil engineers and real estate appraisal and development experts. Their unrebutted testimony was that the existence of nearby 60-foot lots would not adversely affect the value of the larger adjacent lots in the first and second filings. They further testified that the practice of putting large and small lots in the same neighborhood (or even along the same street) was widespread and prevalent in East Baton Rouge Parish. The subdivisions Shenandoah Estates and Inniswold Estates were given as specific examples of this practice.[1]
The plaintiff further adduced the testimony of commission members and commission staff personnel that no real estate appraisal or development experts testified in opposition at the public hearing on this matter, and that no experts in real estate development are on the commission staff. The plaintiff also elicited the testimony of the commission members that their disapproval was based on the bare, bottom-line recommendation of the staff, on opposition voiced by the residents of the subdivision, and on personal feelings and experience.
Mr. Robert Dolese of the commission staff testified for the defendants. Mr. Dolese is an expert in land use planning, although he has little real estate experience. He testified that as acting director of the commission staff, he has overseen the development of virtually every subdivision in the parish for the last ten years. Mr. Dolese testified that nowhere in the parish was there a subdivision where along the main thoroughfare there was an immediate drop of ninety feet in street frontage of immediately adjacent lots. The subdivisions cited by plaintiffs' experts generally used a "tapering down" of lot sizes from larger to smaller as one traveled deeper into the subdivision. Mr. Dolese testified that it was the sudden and drastic decrease in street frontage (from 166 feet to 60 feet) that one would encounter on Donnybrook Drive if the proposed plat went through that prompted the commission staff to recommend disapproval. The drastic decrease in street frontage had an adverse effect on the character of the development, according to the commission staff and Mr. Dolese.
In his written reasons for judgment, the trial judge stated in holding for defendants that he was impressed with the fact that the commission, after disapproving the proposed plat with 60 foot lots, offered the plaintiff a compromise whereby a reduction would be made in street frontages from eighty feet to seventy-five feet. This action, the trial judge stated, indicated "that the members and staff of the commission *1340 attempted to discharge their duty in a fair and responsible manner taking into consideration the views and interests of all of the persons who would be affected by their decision."
In matters concerning the decision of a zoning board or planning commission, the trial or reviewing court cannot substitute its wisdom for that of the governing body except when there is an abuse of discretion or an excessive use of power. Four States Realty Company, Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1975). Generally, the action of a governing body is arbitrary, capricious, and unreasonable if it bears no relation to the health, safety, or general welfare of the public. Village of Euclid, Ohio v. Ambler Realty Company, supra; Hardy v. Mayor and Board of Alderman, City of Eunice, 348 So.2d 143 (La.App. 3rd Cir. 1977), writ den. 350 So.2d 1212 (La.1977).
The decision to disapprove the proposed subdivision plat was made after a public hearing, in accordance with law. However, no expert testimony was elicited at the hearing as to whether the proposed plat would adversely affect the health, safety, or general welfare of the public. The only opposition to the plat was that voiced by residents of the first and second filings. Their primary concern was not that the proposed third filing would create a health or safety problem, but that property values in the neighborhood would be lowered by the introduction of smaller lots into the neighborhood. Thus, there was no evidence during the public hearing presented to the commission that the proposed plat was unacceptable for reasons relating to health or safety of the public.
Disapproval of the plat was based primarily on the recommendation of the commission staff. Again, the record shows conclusively that the staff did not base its recommendation to disapprove on reasons relating to health or safety. No health or safety experts were consulted by the staff in formulating its recommendation. The only reasons given by the staff personnel for recommending disapproval was that the proposed plat would create a unique situation in the parish whereby 60-foot lots would be immediately adjacent to 150-foot lots along the same street. This reason of itself does not bear any real relation to the health, safety or general welfare of the public. The act of a governing body is in general arbitrary and capricious when it bears no relation to the health, safety or general welfare of the public. In the case sub judice, the developer submitted a plat meeting all minimum requirements. Those requirements were set down by the Planning Commission. Disapproval under these circumstances by the commission should be made only for reasons which are articulably strong and compelling.
The only reason given for disapproval dealt with property values and aesthetics. Yet, evidence at trial indicated strongly that property values in the neighborhood would not be lowered by the presence of the smaller lots. And although aesthetics have some part in the general welfare of the public, this part must be deemed marginal when compared to considerations such as public health and safety.
Because of the absolute dearth of evidence in the record to show that the disapproval of the proposed plat was based on reasons relating to the public safety, health, or general welfare, we hold that the Planning Commission acted arbitrarily, capriciously, and unreasonably in refusing approval of the proposed plat. We are compelled to this holding in light of the evidence that the commission's suggested compromise of 75-foot lots would result in a reduction in number of a mere seven lots from the proposed plat. We cannot conceive that reducing the number of lots by seven will have any real effect on traffic flow, access for emergency vehicles and personnel, or any other matters relating to health, safety, and the general welfare of the public.

II
Inasmuch as we have found the action of the Planning Commission to be arbitrary *1341 and capricious, we pretermit any discussion of appellant's first assignment of error.
Therefore, for the above and foregoing reasons, the judgment of the trial court in favor of the defendants is reversed, and this matter is remanded to the trial court with instructions to issue a mandatory injunction directing the defendant Planning Commission to enter preliminary approval for the revised subdivision plat proposed by the plaintiff. All costs in the amount of $1,248.07 are to be paid by the defendants.
REVERSED AND REMANDED.
NOTES
[1] It was explained at trial that due to the state of the present economy, the smaller lots (which are generally less expensive) are more in demand, and that throughout the parish, later filings in large-lot neighborhoods tend to have smaller lots. This practice makes owning a home in a new subdivision a possibility for a larger percentage of the populace. Mr. W. T. Harger, the developer of Shenandoah Estates, testified that he observed a "graduation" effect in Shenandoah Estates, whereby younger couples bought smaller lots in the later filings, and as they prospered, they moved to larger lots in the earlier filings at the front of the subdivision.