WICKER, Judge.
This appeal arises from a zoning dispute in which Doris Fleckinger (Fleckinger), plaintiff/appellant, sought a mandatory injunction compelling the Jefferson Parish Council (Council), defendant/appellee, to approve via enactment of an ordinance, an application for resubdivision. The trial judge affirmed the decision of the council denying the application. We affirm.
Fleckinger owns lot number 291-A in Hessmer Farms Subdivision in Jefferson Parish. She applied for resubdivision of that lot into two lots; namely, 291-A-l and 291-A-2 which was denied. She now appeals the trial court’s affirmance of that denial, asserting the following specification of error:
That the trial judge erred in failing to order the defendant council members to resubdivide Fleckinger’s property as requested and in not finding that the Jefferson Parish Council was unreasonable, arbitrary and capricious in denying the resubdivision of the property involved.
At trial counsel stipulated to the following pertinent facts:
1. Fleckinger No. 1, a copy of the original records of the parish planning department in relation to the resubdivision of the lot sought herein, including exhibit 1-A, the map or plot plan of the lots and surrounding neighborhood with the subject property circled and identified as the subject property with the lot size being the approximate size as indicated on the plot plan.
Exhibit 1-A is depicted below:
*430 [[Image here]]
2. Fleckinger is the owner of plot 291-A, Hessmer Farms Subdivision, Jefferson Parish, Louisiana.
3. The property subject to the resubdi-vision suit measures 210.15 feet front on West Esplanade by a depth of 62.5 feet front on Hessmer Avenue by a width of 210 feet by a depth of 70.56 feet, as indicated by the following survey:
[[Image here]]
4. Pleckinger applied for a resubdivision of said plot 291-A into two lots; namely, 291-A-l and 291-A-2, as mdi-cated in the above survey.
*431 5. The Jefferson Parish planning department recommended approval of the subdivision as requested by Fleckinger into the two lots shown in the above survey.
6. The planning department recommendation was made in accordance with all of the rules, regulations or ordinances of the Parish of Jefferson.
7. Fleckinger met all procedural requirements required by the Parish in proceeding with her request for resubdivision before the council.
8. The resubdivision of the property was submitted before the Jefferson parish Council under Ordinance No. 12985, a copy of which was annexed as an exhibit.
9. On May 9, 1984, said Ordinance No. 12985 was denied by the Council, a copy of said denial was annexed as an exhibit.
The testimony at trial set out the following: Councilmen Robert L. DeViney, Jr. (DeViney) and William A. Hof (Hof) each voted to deny Fleckinger’s resubdivision request. Hof stated that he normally votes to deny such a request when to do so would result in an area having lots of smaller size than those adjoining the property. He explained that although Fleckinger’s lot faces West Esplanade, it also faces Hessmer and he therefore considered it in relation to the lot size of those residents on Hessmer. His decision was made in order to protect the property owners located between Hess-mer and Edenborn.
Hof noted that it is not unusual for certain areas of East Jefferson Parish, such as this one to have different sections in which one street has larger lots while another street has smaller lots. He stated that on one side of Hessmer, the lots are 110 feet in size while on the Fleckinger side the lots are 210 feet.
DeViney also voted for a denial of the resubdivision. He indicated that he did not feel that the proposed resubdivision “met the neighborhood norm of the other lots on Hessmer.” He explained that “neighborhood norm” refers to lot size. He agreed with Hof that the lots on Fleckinger’s side of Hessmer were “very deep” in comparison to the lots on the opposite side of Hessmer.
He described the Fleckinger side of Hessmer as an unusual neighborhood with houses approximately twice the size of a normal house. He based his decision to deny Fleckinger’s request on the “neighborhood norm.” He considered the “neighborhood norm” to be the neighborhood on Edenborn. He described the houses in the block which face Edenborn as large, sitting back from the street, and located on exceptionally deep lots.
He noted, however, that one lot in this block, directly to Fleckinger’s rear, and facing Edenborn, had been resubdivided. The owner of that lot, Michael Pisciotta (Pisciot-ta) testified that his lot is at the corner of Edenborn and West Esplanade. The lot was originally 78 x 210 feet, but had been resubdivided into two lots in 1978, one of which is still owned by himself.
The trial judge attached significance to the fact that the Pisciotta lot had been resubdivided in 1978 and not recently. He specifically asked counsel to provide the court with the dates of resubdivision of the parcel between Hessmer and Chateau and Chateau and Marseilles. He stated that the recency or remoteness of the resubdivision of these areas would determine his decision.
In response to the court’s request for additional exhibits, counsel supplemented the trial court record with copies of ordinances showing resubdivision adoptions, dated August 5, 1971 (for lots in the Hess-mer Farms Subdivision and Chateau Parish Subdivision, Ordinance No. 10295), February 8,1978 (Pisciotta lot in Hessmer Farms Subdivision, Ordinance No. 13254), June 6, 1979 (plot 289-A in Hessmer Farms Subdivision, Ordinance No. 13925), and March 11, 1981 (plot 288-A, Hessmer Farms Subdivision, Ordinance No. 14670). Thus the most recent resubdivision was adopted in 1981.
The 1981 resubdivision refers to plot 288-A which is bordered by West Esplanade, Edenbom, North Amoult and Alan. On the map or plot plan depicted above, this property is not within the immediate neighborhood of the Fleckinger property.
*432 Two neighbors testified as to their objection to the resubdivision. Mrs. Bruno Bo-sio (Bosio) stated that her lot fronts on Hessmer and is 65 X 210 feet in size. Her house sits back 50 feet and contains 5,000 square feet in both the house and garage. She signed a petition circulated by the neighbors on the Pleckinger side of Hess-mer voicing their objection to the resubdivision.
She was concerned that a resubdivision into smaller lots would necessarily mean that smaller houses would be built on these lots. She considered the change in lot size to be a deviation from the neighborhood norm. She described the houses on the Fleckinger side of Hessmer to range in price from $300,000.00 to $1,000,000.00. She noted that when the Pisciotta lot had been resubdivided she had never been notified although she was living in that area at the time.
She did note, however, that the houses on the other side of Hessmer were smaller, but that everyone who built a house on the Pleckinger side built a large house.
Carol Merlin also lives on the Pleckinger side of Hessmer. Her house sits back 95 feet and contains 10,000 square feet. She also signed the petition circulated by the neighbors opposing the resubdivision. She stated that she opposed the request because she wanted to keep the “consistency of the neighborhood” insofar as having a standard house size.
Hugh Ford, an expert in planning and zoning, testified that the resubdivision met all of the requirements. Although he was aware that the resubdivision did not conform to the majority of lots on Hessmer in the same block, he considered that since it fronted West Esplanade, it generally conformed to the neighborhood consisting of lots on West Esplanade.
Ford’s definition of “neighborhood” is that of property approximately within a 300 foot radius. He noted that the property on the opposite side of the street of Hessmer consisted of smaller lots and that these lots were within a 300 foot radius. He noted, however, that although he recommended approval of the resubdivision, that his recommendation was only a technical one.
Appellant argues that the decision of the council to deny the resubdivision cannot be based upon the opposition of voters residing in the area, citing Jemison v. City of Kenner, 277 So.2d 728 (La.App. 4th Cir. 1973), writ denied, 281 So.2d 753 (La.1973) and West v. City of Lake Charles, 375 So.2d 206 (La.App. 3rd Cir.1979), writ denied, 378 So.2d 435 (La.1979).
However, Jemison, supra did not stand for the proposition that public officials should totally disregard the expression of the residents. In West, supra the determination was based on objective evidence as well.
We recently explained that:
[cjertainly it is proper for the council to have considered the neighborhood residents’ reaction to the proposed [rezoning] amendment. The enabling statute La. R.S. 33:4721 states that it is the purpose of zoning regulations to promote public health, safety, morals, convenience, order, prosperity, and general welfare of the community. The residents of the area are in a position to have knowledge of how such a proposed change would affect the quality of life of the area. Terrytown Properties, Inc. v. Parish of Jefferson, 416 So.2d 323 (La.App. 5th Cir.1982) at 326.
See also, Hibernia National Bank in New Orleans v. City of New Orleans, 465 So.2d 1239 (La.App. 4th Cir.1984), writ denied 459 So.2d 542 (La.1984).
The council did not rely solely on resident objections. Instead, it based its determination on the basis that the proposed change would violate the “neighborhood norm.” Although Ford considered a broader radius to constitute the “neighborhood norm”, he admitted that his recommendation was a “technical” one. The council, however, went beyond the purely technical aspects and considered the impact on the quality of life for those residents on the Fleckinger side of Hessmer and on Edenborn.
The council’s conclusion that the re-subdivision would violate the “neighborhood norm”; namely, the property located *433 between Hessmer and Edenborn, is not an unreasonable one. This court should therefore refrain from substituting its judgment for that of the council. Furr v. Mayor and City Council of Baker, 408 So.2d 248 (La.1981).
Our Louisiana Supreme Court has held that:
[t]he authority to enact zoning ordinances flows from the police power of governmental bodies and is valid if it bears a rational relation to the health, safety and welfare of the public. Four States Realty v. City of Baton Rouge, 309 So.2d 659 (La.1975). Folsom Rd. Civic Ass’n v. Par. of St. Tammany, 407 So.2d 1219, 1222 (La.1981).
Fleckinger contends that the reasons articulated by the council are not valid since they bear no relation to health, safety, morals or general welfare. She cites the Christopher Estates, Inc. v. Parish of East Baton Rouge, 413 So.2d 1336 (La. App. 1st Cir.1982) case in support of her contention.
In Christopher, supra the court considered a proposed change in plat from lots with 60 feet of street frontage as opposed to a frontage of 80 feet. The court found that the only reason given for declining to subdivide the lots into smaller lots was that of decrease in property values and aesthetics, and that although these elements were part of the general welfare, they were “marginal.” Id. at 1340.
The facts in Christopher, supra are distinguishable from the facts in the instant case. In Christopher, supra, the smaller lots were shown to be more in demand. Furthermore, there was a widespread practice to put small and large lots together on the same street or neighborhood.
Importantly, the Christopher, supra court based its decision on a lack of evidence to show a reasonable basis for the disapproval. Importantly, the evidence established instead that the proposed change would be beneficial and not detrimental.
Here, DeViney explained that the East Bank of Jefferson Parish, which includes this area, is unique. The Eastbank has areas devoted exclusively to large lots and large homes. Since the area in the instant case is unique, we do not consider it unreasonable for the council to conclude that it is in the best interest of the general welfare to preserve the beauty and integrity of these unique sections.
Although Fleckinger testified that a smaller lot would not necessarily mean a smaller house, nonetheless, Basio testified that the houses on Fleckinger’s side of Hessmer are significantly larger than those across Hessmer built on the smaller size lots.
Furthermore, as noted in Furr, supra, “[ojrderly development of a community is a legitimate objective of zoning.”[1] Id. at 249.
In State ex rel. Civello v. City of New Orleans, et al., 154 La. 271, 97 So. 440, 444 (La.1923) the Louisiana Supreme Court explained the relationship of aesthetic considerations to the general welfare as follows:
[i]f by the term “aesthetic considerations” is meant a regard merely for outward appearances, for good taste in the matter of the beauty of the neighborhood itself, we do not observe any substantial reason for saying that such a consideration is not a matter of general welfare. The beauty of a fashionable residence neighborhood in a city is for the comfort and happiness of the residents, and it sustains in a general way the value of property in the neighborhood. It is therefore as much a matter of general welfare as is any other condition that fosters comfort or happiness, and consequent values generally of the property in the neighborhood. Why should not the police power avail, as well to suppress or prevent a nuisance committed by offending the sense of sight, as to suppress or prevent a nuisance committed by offending the sense of hearing, or the olfactory nerves? An eyesore in a neighborhood of residences might be as much a public nuisance, and as ruinous to property values in the neighborhood generally, as a disagreeable noise, or odor, or a menace *434 to safety or health. The difference is not in principle, but only in degree. In fact, we believe that the billboard case, Cu-sack v. Chicago, 242 U.S. 526, 37 Sup.Ct. 190, 61 L.Ed. 472, L.R.A.1918A, 136, Ann.Cas.l917C, 594, or St. Louis Poster Advertising Co. v. St. Louis, 249 U.S. 269, 39 Sup.Ct. 274, 63 L.Ed. 599, or the skyline case, Welch v. Swasey, 214 U.S. 91, 29 Sup.Ct. 567, 53 L.Ed. 923, or the case of Hubbard v. Taunton, 140 Mass. 467, 5 N.E. 157, might have rested as logically upon the so-called aesthetic considerations as upon the supposed other considerations of general welfare.
Another argument asserted is that the denial was discriminatory since similar lots had previously been resubdivided. We find however that the record establishes that all of the lots on Fleckinger’s side of Hessmer consist of large, deep lots.
The council was mindful of the change in resubdivision of the Pisciotta lot to the rear of Fleckinger. However, this lot was re-subdivided in 1978, six years before the denial of Fleckinger’s request.
Furthermore, “[fjor [Fleckinger] to prevail [she] must show not merely that the decision of [the council] was wrong but that it was arbitrary, unreasonable or capricious.” Patemostro v. Parish of Jefferson, 289 So.2d 327, 331 (La.App. 4th Cir. 1973), writ refused, (no error of law) 293 So.2d 183 (La.1974).
Following the above standard of review, we do not find either an abuse of discretion on the part of the council or that the trial judge was clearly wrong under the facts of this case. Canter v. Koehring Co., 283 So.2d 716 (La.1973). Both the council and the court considered all of the attending circumstances. See Smith v. City of Baton Rouge, et al., 233 So.2d 569 (La.App. 1st Cir.1970).
Accordingly, the decision of the trial court is affirmed with all costs to be paid by appellant.
AFFIRMED.

. The zoning provisions in Furr limited an area to particular uses. In particular, it excluded all businesses except those needed to serve the residents of a small municipality.