| 3000-3032 ST. CLAUDE AVENUE, LLC | * | NO. 2022-CA-0813 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| THE CITY OF NEW ORLEANS AND THE NEW ORLEANS CITY COUNCIL | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-05452, DIVISION "B"
Honorable Richard G. Perque, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Paula A. Brown, Judge Dale N. Atkins)


Christopher J. Kane
John M. Duck
Marshall A. Hevron
Erica P. Sensenbrenner
ADAMS AND REESE LLP
701 Poydras Street
Suite 4500
New Orleans, LA 70139

      COUNSEL FOR PLAINTIFF/APPELLEE, 3000-3032 St. Claude Avenue, LLC

Shawn Lindsay
Corwin St. Raymond
Kevin C. Hill
Donesia D. Turner
CITY ATTORNEY'S OFFICE
1300 Perdido Street
City Hall - Room 5E03
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLANT, The City of New Orleans and the New Orleans City Council

**REVERSED AND RENDERED JUNE 22, 2023**

This is a zoning matter. In this appeal, the New Orleans City Council ("City Council") and the City of New Orleans (collectively the "City") seek review of the trial court's October 12, 2022 judgment, which held that the City Council acted arbitrarily, capriciously, and without consideration of the facts and circumstances regarding Zoning Docket No. 021-18. The trial court ordered the City Council to approve Zoning Docket No. 021-18, a zoning map amendment request by 3000-3032 St. Claude Avenue, LLC ("the LLC"), and to adopt an ordinance to effectuate the map amendment request by the LLC. Upon review, we find that the trial court erred in its determination that the City Council acted arbitrarily and capriciously in its denial of the LLC's request for a zoning map amendment. For the following reasons, we reverse and render judgment.

## FACTUAL AND PROCEDURAL HISTORY

This matter came before this Court previously as an appeal filed by the City. *3000-3032 St. Claude Ave., LLC v. City of New Orleans*, 2021-0139 (La. App. 4 Cir 12/9/21), 332 So.3d 1251. Because the judgment appealed therein did not constitute a final judgment, this Court converted the appeal into a writ application and issued a Writ Opinion on December 9, 2021. *Id.* at pp. 4-5, 332 So.3d at 1254.

1

In the Writ Opinion, this Court summarized the relevant factual and procedural background as follows:

> In June 2017, [the LLC] purchased seven adjacent lots located at municipal addresses 3000-3032 St. Claude Avenue, in the Bywater neighborhood of New Orleans. Three of the seven lots purchased by [the LLC] are split-zoned, having more than one zoning classification. The front portions of the three split-zoned lots, all fronting on St. Claude Avenue, are zoned HMC-2 Historic Marigny/Treme/Bywater Commercial District, and the rear portions of the lots, located within the middle of the block, are zoned HMR-3 Historic Marigny/Treme/Bywater Residential District.
>
> In December 2017, [the LLC] filed two requests with the City Planning Commission ("CPC") that were both docketed as Zoning Docket No. 021-18. The first request sought approval from the City to rezone the rear portions of the three split-zoned lots from HMR-3 Residential to HMC-2 Commercial, thereby applying a single zoning designation. The second request sought approval from the City for the issuance of a conditional use permit for a 37-room hotel complex (the Sun Yard Hotel) with a restaurant, outdoor bar, and pool/yard area in a HMC-2 Commercial District.
>
> In consideration of the requests, the CPC Staff conducted a study and prepared a report for the CPC to review prior to holding a public hearing and making its recommendation to the City Council. *See* CZO, Art. 4, §§ 4.2C, 4.2.D.3. The CPC Staff report provided a history of the zoning and land use of the property at issue and the surrounding area; discussed the purpose of the rezoning request and the potential effect on the adjacent land uses; included detailed comments from design review staff; considered comments from other agencies/departments/committees; and reviewed compliance of the proposal with approval standards for zoning amendments. Ultimately, the CPC Staff report recommended approval of both of [the LLC's] requests, subject to twenty-one provisos.
>
> The CPC held two public hearings, on February 6, 2018 and March 13, 2018, at which the [the LLC's] requests were considered. At both meetings, the CPC summarized the requests, stated the recommendations of the Staff, and heard statements from [the LLC], proponents, and opponents. At the conclusion of the March 13, 2018 meeting, the CPC voted to recommend the City Council deny [the LLC's] requests. On March 19, 2018, the CPC issued its report to the City Council with its recommendation to deny [the LLC's] requests.
>
> The City Council also held two public hearings on [the LLC's] zoning requests. At the April 19, 2018 hearing, the requests received strong opposition from neighborhood residents and groups in public

2

testimony and written responses. At the conclusion of the first hearing, the City Council voted to defer a decision on the requests until May 3, 2018.

Prior to the May 3, 2018 City Council hearing, [the LLC] withdrew its second request for the conditional use permit for the hotel complex. Consequently, at the hearing, the City Council considered only the zoning amendment request. After hearing further testimony in support of and in opposition to the zoning amendment request and considering evidence submitted, the City Council took up Councilmember Ramsey's motion to overrule the CPC's recommendation and approve the request for zoning amendment. The motion failed by a 2-3 vote. Thus, the City denied [the LLC's] request in Zoning Docket 021-18.

On June 1, 2018, [the LLC] filed in the district court a petition for judicial review of the City Council's denial of the zoning amendment request. [The LLC] asserted that the City Council's decision was arbitrary and capricious, lacking any supporting evidence or reasons for its decision. Additionally, [the LLC] sought reversal of the City Council's decision and requested that City Council be ordered to effectuate a zoning map amendment, on the basis that the City Council had a ministerial duty to grant the request for rezoning.

On June 5, 2020, the district court held a hearing on [the LLC's] petition for judicial review. At that hearing, the district court noted that the record focused almost exclusively on the conditional use permit request, which was withdrawn prior to the vote, and there was little information with reference to the City Council's consideration of the zoning amendment issue. At the conclusion of the hearing, the district court took the matter under advisement and permitted the parties to file post-hearing briefs to address whether the City Council gave "true consideration and focus" to the zoning amendment request prior to denying it.

At the November 6, 2020 hearing, the district court heard brief arguments before rendering judgment. After review of the record and consideration of briefs, the district court ruled that the matter would be remanded to the City Council "for further review and clarity as relates to the basis for their decision." Thereafter, the district court signed the November 20, 2020 judgment reflecting its ruling.

The City then filed a motion for suspensive appeal of the district court's November 20, 2020 judgment. [The LLC] filed an opposition to the City's motion for suspensive appeal, arguing that the district court's judgment was not final and appealable. But, the district court granted the City's motion for appeal. After the appeal was lodged in this Court, [the LLC] filed a motion to dismiss the appeal

3

for lack of jurisdiction, because the judgment was not final and appealable. On April 9, 2021, this Court converted the City's appeal to an application for supervisory writs and denied [the LLC's] motion to dismiss as moot.

The City now seeks supervisory review of the district court's November 20, 2020 judgment remanding this matter for further review of [the LLC's] request for a zoning amendment and to provide clarity on its reasons for denying the request. The City argues that the vote to deny [the LLC's] request for the zoning amendment was not arbitrary or capricious, or characterized by an abuse of discretion, and, therefore, the district court erred by remanding plaintiff's petition for judicial review for further review and clarity on the City Council's decision.

*3000-3032 St. Claude Ave.*, 2021-0139, pp. 1-5, 332 So.3d at 1253-55. After reciting the above factual background and procedural history, this Court stated that "the record of the City Council hearings lack[ed] clarity on the sole issue of the zoning amendment request" and that "the City ha[d] not shown that there [wa]s sufficient record evidence that would allow this Court to make a ruling on the petition for judicial review." *Id.* at p. 9, 332 So.3d at 1257. This Court ultimately found no abuse of discretion in the trial court's November 20, 2020 judgment, which remanded the matter to the City Council for further review and to articulate the basis for its denial of the zoning map amendment; therefore, this Court granted the City's writ application but denied relief. *Id.*

### The April 7, 2022 City Council Hearing

Thereafter, on April 7, 2022, the City Council held a meeting to further reconsider Zoning Docket No. 021-18 ("the Zoning Amendment"), which solely addressed the rezoning of three split-zoned lots owned by the LLC in the 3000 block of St. Claude Avenue ("the Property"). The City Planning Commission ("the CPC"), the LLC, Neighbors First for Bywater ("Neighbors First"), and several community members made presentations and comments to the City Council. The

4

representative from the CPC stated that the CPC held a public hearing at which it heard "a lot of comments from neighbors about the potential impact of the commercial zoning, and the hotel itself, on the surrounding residential properties, especially given the relatively large size of [the Property,] and recommended that the City Council deny the application . . . ."

The LLC's counsel stated that the Property was an "island" with "no access to it," and that the case was remanded for further consideration by the City Council "because this island is not permitted." Further, the LLC's counsel opined that there was evidence of the Property "not being able to be developed" and that the City was classifying the zoning as a "buffer." According to its counsel, the LLC sought to "put [the Property] back into commerce."

The public made comments by filling out cards that were read into the record or by making oral statements before the City Council. These comments included, in pertinent parts:

> "[W]hen the residents in the blocks surrounding this area bought their homes, they knew that the abutting area was zoned HMR-3 Residential. They cannot just pick up and move. So I would ask you to consider the residents."

> "[T]he neighborhood needs more residential space, we have plenty of commercial space."

> "[We are] not lawyers, [we are] not politicians, [we are] not developers. We live in this neighborhood. I live at 3052 St. Claude Avenue, and [I have] lived there for almost thirty years. It really is a neighborhood. [I am] not opposed to businesses; [I am] right between a lot of businesses . . . I want more wonderful things on my block. But this idea that you would change this part of land is a wrong move . . . . Please [do not] do this."

> "[The Property is] being painted as an island; [it is] not an island. [It is] a swath of residential land that has a large driveway and access to it . . . [the LLC] could have built residential housing there. They did not . . . . We cannot sell the city over to tourism and forget

5

about the residents, and lower income residents especially, that need places to live."

"Key lots were used for in-city farming . . . when I bought my property in '97, there were horses on [the Property.] There were residents in every single house."

"[I have] been a homeowner in Bywater since 1988 . . . . Bywater remains a quaint and quiet neighborhood with beautiful architecture . . . . Why allow [the LLC] to invade Bywater by allowing these out of town developers to build buildings and structures that are intrusive and will change the appearance, the ambiance, and landscape of our neighborhood – the place where we call home."

A few, but not all, speakers mentioned their opposition to the previously proposed hotel, and a need for a "residential buffer."

After hearing public comment on the LLC's Zoning Amendment, Councilmember King moved for a vote to deny the zoning map amendment. Councilmember Giarrusso asked a city attorney whether that, "given the legal issues, do we need to do anything about putting anything on the record?" The city attorney indicated that nothing additional was needed. Motion M-22-194, to deny the Zoning Amendment, passed 6-0, with one member absent.

### The October 12, 2022 Judgment

Subsequently, on May 4, 2022, the LLC filed an Amended Petition for Judicial Review ("Amended Petition"). The trial court held a hearing on the Amended Petition on August 26, 2022, and after taking the matter under advisement, ordered both parties to file post-hearing briefs. Specifically, the trial court ordered the parties to address: 1) why the trial court should not remand the matter to the City Council to explain their vote; or 2) why the trial court should not grant the relief requested from the LLC.

After receipt of the post-hearing briefs, the trial court signed a judgment on October 12, 2022, granting the LLC's Amended Petition and mandating the City

6

Council to approve the Zoning Amendment and by ordinance to effectuate a zoning map change on the rear portion from HMR-3 Residential to HMC-2 Commercial. The judgment stated, in pertinent part:

> **ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the New Orleans City Council acted arbitrarily, capriciously, and without consideration nor appropriate regard of the facts and circumstances of the application related to Zoning Docket N[o]. 21-18;

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Zoning Docket N[o]. 21-18 is hereby reversed and the City Council instructed, after all due and legal delays, appeal delays, and otherwise, to approve Zoning Docket N[o]. 21-18 and by ordinance effectuate a zoning map change on the official zoning maps of the City for the rear portion of Lots "E-2," "R," and "10," Square 363, Third Municipal District, City of New Orleans, Louisiana bounded by St. Claude Avenue, Clouet, N. Rampart, and Montegut Streets from HMR-3 Historic Marigny/Treme/Bywater Residential District to HMC-2 Historic Marigny/Treme/Bywater Commercial District.

The City timely filed a Motion for Suspensive Appeal.

## DISCUSSION

On appeal, the City asserts two assignments of error. First, the City contends that "the [trial] court erred by shifting the burden of proof to the City Council to demonstrate why its decision was in fact not arbitrary and capricious." Second, the City contends that "the [trial] court erred in finding that the City Council's decision to accept the CPC's recommendation of denial in [Zoning Docket No.] 021-18 was arbitrary and capricious, or characterized by an abuse of discretion."

### *Standard of Review*

"A challenge to a zoning decision in Louisiana is a *de novo* proceeding on the issue of whether the result of the legislation is arbitrary and capricious, and therefore a taking of property without due process of law." *Toups v. City of Shreveport*, 2010-1559, p. 4 (La. 3/15/11), 60 So.3d 1215, 1218 (citing *Palermo*

*Land Co. v. Planning Comm'n of Calcasieu Par.*, 561 So.2d 482, 492 (La. 1990)). An appellate court reviews questions of law in a zoning matter under the *de novo* standard of review. *Cordes v. Bd. of Zoning Adjustments*, 2009-0976, p. 6 (La. App. 4 Cir 1/20/10), 31 So.3d 504, 508 (citing *Sarpy v. ESAD, Inc.*, 2007-0347, p. 4 (La. App. 4 Cir. 9/19/07), 968 So.2d 736, 738). Regarding factual findings in a zoning matter, this Court has explained that "[a] reviewing court does not consider whether the [trial] court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion." *Esplanade Ridge Civic Ass'n v. City of New Orleans*, 2013-1062, p. 4 (La. App. 4 Cir. 2/12/14), 136 So.3d 166, 169 (quoting *King v. Caddo Par. Comm'n*, 2014-0015, pp. 14-15 (La. 10/20/98), 719 So.2d 410, 418).

We now discuss each assignment of error in turn.

### ASSIGNMENT OF ERROR NUMBER ONE

In its first assignment of error, the City contends that "the [trial] court erred when it shifted the burden to the City Council to demonstrate why its decision of denial was in fact not arbitrary and capricious." Louisiana jurisprudence provides that a "presumption of validity attaches to all zoning decisions . . . ." *Palermo Land Co.*, 561 So.2d at 490. "It applies to all zoning ordinances, including piecemeal and spot zonings . . . ." *Id.* at 491. "[T]he burden rests on the challenger to overcome this presumption. . . . The opponent must show a real or substantial relationship to the general welfare is lacking." *Id.* Though this presumption is rebuttable, the burden of proof rests on the challenger to overcome this presumption. *Cordes*, 2009-0976, p. 6, 31 So.3d at 508 (citing *Curran v. Bd. of Zoning Adjustments Through Mason*, 1990-1441 (La. App. 4th Cir. 6/18/91), 580 So.2d 417, 418); *Palermo Land Co.*, 561 So.2d at 490 (citing *Four States Realty*

8

*Co. v. City of Baton Rouge*, 309 So.2d 659, 665-66 (La. 1975); *Morton v. Jefferson Par. Council*, 419 So.2d 431, 434 (La. 1982); *Folsom Road Civic Ass'n v. Par. of St. Tammany*, 407 So.2d 1219, 1222 (La. 1981); *Furr v. Mayor and City Council of Baker*, 408 So.2d 248, 249 (La. 1981); *Southside Civic Ass'n v. Guaranty Savings Assurance Co.*, 339 So.2d 323, 325 (La. 1976)). In particular, the challenger must show an arbitrary and unreasonable exercise of legislative authority in that "a real or substantial relationship to the general welfare is lacking." *Palermo Land Co.*, 561 So.2d at 490, 493. The Louisiana Supreme Court has stated that, "[i]n order to justify a holding that the legislative action is arbitrary, capricious and unreasonable," the challenger must show both "that there was no room for a reasonable difference of opinion, and that there was no substantial evidence upon which the legislative action could have been justified." *Four States Realty Co.*, 309 So.2d 659 at 664. In *Terrytown Properties, Inc. v. Jefferson Parish*, the Louisiana Fifth Circuit Court of Appeal explained that for a court to substitute its judgment in place of the legislative entity's decision in a zoning matter, the challenger must have met a two-fold burden of proof: the challenger "must not only show the merits of *their requested* zoning change . . . but also demonstrate that the current zoning of the property is unreasonable, arbitrary, and discriminatory under all attending circumstances." 416 So.2d 323, 325 (La. App. 5th Cir. 1982). *See also Kirk v. Town of Westlake*, 373 So.2d 601, 604 (La. App. 3rd Cir. 1979).

Moreover, a zoning decision by the City Council is not invalid merely because the City Council did not include an explanation of its decision. As this Court has explained:

> The City is a municipality and, as such, the City's administrative hearing officer is excluded from complying with the [Administrative Procedure Act ("APA")] and thus is not bound by the

dictates of La. R.S. 49:958.[1] *See George v. Dep't of Fire*, 637 So.2d 1097, 1103 (La. App. 4[th] Cir. 1994) (finding that the clear language of the APA excludes the City Civil Service Commission from its coverage); *Franklin v. City of Alexandria*, 2018-634, p. 12 (La. App. 3 Cir. 5/1/19), 272 So.3d 120, 127 (APA did not apply to the City Council, the legislative arm of the City, a political subdivision of the State).[] Moreover, even if the Hearing Officer in this case was subject to the provisions of La. R.S. 49:958, her failure to include findings of fact and conclusions of law in her decision was not fatal.

Louisiana jurisprudence provides that "where the findings and reasons therefor are necessarily implicit in the record and the administrative determination is supported and sustainable by a preponderance of the evidence, the administrative decision is not invalid merely because the agency failed to explicitly articulate that which is self-evident." *In re Ark-La-Tex Antique & Classic Vehicles, Inc.*, 2005-1931, p. 7 (La. App. 1 Cir. 9/15/06), 943 So.2d 1169, 1174 (citing *Summers v. Sutton*, 428 So.2d 1121, 1128 (La. App. 1 Cir. 1983)).

*Chaumont v. City of New Orleans*, 2020-0017, p. 12 (La. App. 4 Cir. 6/3/20), 302 So.3d 39, 50 (footnote omitted).

In *Terrytown Props., Inc.*, property owners brought an action against Jefferson Parish and challenged the Jefferson Parish Council's decision which denied their request for rezoning of their property. The trial court ordered a mandatory injunction rezoning the property, and Jefferson Parish appealed. *Terrytown*, 461 So.2d at 323. On appeal, the Louisiana Fifth Circuit ("Fifth Circuit") held that the property owners failed to carry their double burden of proving that their proposed zoning designation had merits (as opposed to other commercial or residential designations) and that the Jefferson Parish Council's

---

[1] The Louisiana Legislature redesignated La. R.S. 49:958 as La. R.S. 49:977 by Acts 2022, No. 663, §1. It provides, in pertinent part:

A final decision or order adverse to a party in an adjudication proceeding shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding.

action in denying their rezoning request had no rational basis. *Id.* Finding that the property owners had not carried their burden, the Fifth Circuit concluded that the trial court erred in granting a mandatory injunction requiring rezoning of the property in question. *Id.* at 326. Accordingly, the Fifth Circuit reversed the trial court's judgment; rendered judgment in favor of Jefferson Parish; and dismissed the property owners' suit. *Id. See also Palermo Land Co.*, 561 So.2d at 491 (holding that the appellate court "erred in its failure to apply [the] presumption and thereby place upon plaintiffs the burden of proving a lack of relation between the rezoning at issue and the welfare of the . . . community."); *Kirk v. Town of Westlake*, 373 So.2d 601, 604 (La. App. 3rd Cir. 1979).

In its Reasons for Judgment regarding the October 12, 2022 judgment, the trial court stated: [2]

> A meticulous review of the record and the aforesaid April 7, 2022 hearing simply *does not offer novel nor elaborated insight into the decision-making process of the City Council in adherence with the governing arbitrary and capricious standard applicable to such legislative decisions*. Accordingly, this Court, and therefore the judicial record, lack the requisite clarity to ascertain whether the rationale behind the City Council's decision to deny [the LLC]'s application for the rezoning of the disputed lots from a split-zone to a single zone designation was in fact not arbitrary and capricious. More specifically, *it is unknown to this Court whether or not the City Council truly considered the rezoning application* asserted by the [LLC] without consideration for the since withdrawn conditional use permit. . . . *Notably, this court does not have the authority to assume a rational basis existed* for the City Council's decision and after having provided the City Council an opportunity to elaborate on remand with the April 7, 2022 hearing, nothing of substance supplemented the record to satisfy the applicable standard of review. Therefore, this Court is unable to determine that a rational basis for the City

---

[2] "It is a 'well-settled rule that the [trial] court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *TKTMJ, Inc. v. Sewerage & Water Bd. of New Orleans*, 2020-0154, p. 4 (La. App. 4 Cir. 12/16/20), 313 So.3d 979 n.4 (quoting *Wooley v. Lucksinger,* 2009-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572). "However, a court of appeal may review the trial court's reasons for judgment to 'gain insight' into the trial court's judgment." *Id.*

Council's decision existed at the time of either City Council vote on [the LLC]'s application.

Nearly four years ago, the City Council was in precisely the same position it presently finds itself – before this [trial] court defending its decision to deny [the LLC]'s rezoning application. However, on this appearance, *the City Council has been since provided a second chance to meet the standard demanded by Louisiana law governing how a legislature must exercise its authority* in granting or denying rezoning applications or zoning map changes. *The City Council has failed to do so.*

(Emphasis added.) Based on the above-quoted excerpt from the trial court's Reasons for Judgment, the City's first assignment of error has merit. Specifically, the trial court's reasons for judgment indicate that the trial court placed the burden of proof on the City to establish that its decision was not arbitrary and capricious and found that the City Council failed to provide a basis for its decision. According to Louisiana jurisprudence, because the City Council's April 7, 2022 vote constituted a zoning decision by a legislative body, it is presumed to be valid unless and until the LLC (as the challenger) demonstrated that the decision was arbitrary and capricious. The trial court's October 12, 2022 judgment and Reasons for Judgment do not demonstrate a finding that the LLC established an arbitrary and unreasonable exercise of legislative authority so as to rebut the presumption of validity attached to the City Council's decision and shift the burden of proof to the City Council. This was error for the trial court to do so. Further, the City Council's failure to include findings of fact and conclusions of law was not fatal. *See Chaumont*, 2020-0017, p.12, 302 So.3d at 50. We find that the City's first assignment of error has merit.

In light of the City's first assignment of error having merit, we independently analyze whether the LLC bore its burden of proof required for the

12

trial court to be able to substitute its views for those of the City Council. In so doing, we turn to the to the City's second assignment of error.

### ASSIGNMENT OF ERROR NUMBER TWO

In its second assignment of error, the City asserts that "[t]he [trial] court erred in finding that the City Council's decision to accept the CPC's recommendation of denial in [Zoning Docket] 021-18, was arbitrary and capricious, or characterized by an abuse of discretion." In response, the LLC contends that the City Council's decision was arbitrary and capricious, thereby constituting a taking. Having already found that the trial court improperly shifted the burden of proof to the City Council, we analyze whether the record presents evidence to justify the judicial branch substituting its views for that of the City Council. *See Terrytown Props., Inc.*, 416 So.2d at 325. To do so, we must first consider whether the LLC proved that the City Council's decision was arbitrary and capricious before addressing the merits of the LLC's requested zoning change, as discussed below. *Id.*

### Legislative Authority in Zoning Matters

"A challenge to a zoning decision in Louisiana is a *de novo* proceeding on the issue of whether the result of the legislation is arbitrary and capricious, and therefore a taking of property without due process of law." *Neighbors First for Bywater, Inc. v. City of New Orleans/New Orleans City Council*, 2017-0256, p. 10 (La. App. 4 Cir. 12/13/17), 2017 WL 6350339, at *5 (quoting *Toups*, 2010-1559, p. 4, 60 So.3d at 1218). "Zoning is a legislative function. The authority to enact zoning regulations flows from the police power of the various governmental bodies." *Palermo Land Co.*, 561 So.2d at 491 (citing *Four States Realty Co.*, 309 So.2d 659; *Folsom Road Civic Ass'n*, 407 So.2d 1219; *Morton*, 419 So.2d 431).

"Because legislative action [is] a manifestation of the will of the people, every presumption of law and fact must be indulged in favor of its constitutionality." *Four States Realty Co.*, 309 So.2d at 666 (citing *State v. Guidry*, 247 La. 631, 173 So.2d 192 (1965)).

"Judicial review of zoning decisions acts merely as a check on this legislative power . . . to ensure that there is no abuse of the power. Courts will not and cannot substitute their judgment for that of the legislative authority." *Palermo Land Co.*, 561 So.2d at 492 (citing *Four States Realty Co.*, 309 So.2d 659). "The purpose of certiorari review . . . is . . . 'to decide if the evidence establishes a legal and substantial basis for the [legislative entity's] decision.'" *Esplanade Ridge Civic Ass'n*, 2013-1062, p. 3, 136 So.3d at 169 (quoting *Elysian Fields, Inc. v. St. Martin*, 600 So.2d 69, 72 (La. App. 4th Cir. 1992)). For the judicial branch to substitute its own view in a zoning matter, the challenger to a zoning decision must demonstrate that the legislative entity's decision was arbitrary and capricious, as well as the merits of the challenger's requested zoning change. *Terrytown Props., Inc.*, 416 So.2d at 325.

### Arbitrary, Capricious, or Bears No Relation to Health, Safety, or General Welfare

"The test of whether a zoning board's action is arbitrary and capricious is whether the action is reasonable under the circumstances." *Esplanade Ridge Civic Ass'n*, 2013-1062, p. 4, 136 So.3d at 169 (quoting *King*, 2014-0015, p. 14, 719 So.2d 410, 418). "'Capriciously' has been defined as a conclusion reached with no substantial evidence to support it or a conclusion contrary to substantial competent evidence; whereas, the term 'arbitrary' infers a disregard or failure to give proper weight to the evidence." *Neighbors First for Bywater, Inc.*, 2017-0256, p.11, 2017

WL 6350339, at *5 (citing *Rubenstein v. City of New Orleans*, 2007-1211, p. 3 (La. App. 4 Cir. 4/30/08), 982 So.2d 964, 966). "The action of a governmental body is arbitrary and capricious if it bears no relation to the health, safety, or general welfare of the public." *Id.* at p. 20, 2017 WL 6350339, at *8 (citing *Palermo*, 561 So.2d at 491). Further, the Louisiana Supreme Court has explained:

> It is not necessary, for the validity of the ordinance in question, that [the court] should deem the ordinance justified by considerations of public health, safety, comfort, or the general welfare. *It is sufficient that the municipal council could reasonably have had such considerations in mind*. If such considerations could have justified the ordinances, [the court] must assume that they did justify them.
>
> . . . .
>
> Whether an ordinance bears the requisite relationship to the health, safety and welfare of the public is a factual question which must be determined from the evidence in the record. If it appears appropriate and well[-]founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld.

*Palermo Land Co.*, 561 So.2d at 491 (emphasis added) (quoting *State ex rel. Civello*, 154 La. 271, 97 So. 440 (1923)). "In order to justify a holding that the legislative action is arbitrary, capricious and unreasonable, it must be shown that there was no room for a reasonable difference of opinion, and that there was no substantial evidence upon which the legislative action could have been justified." *Four States Realty Co.*, 309 So.2d at 665-66. However, "[w]henever the propriety of a zoning decision is debatable, it will be upheld." *Palermo Land Co.*, 561 So.2d at 493 (citing *Hunters Grove Homeowners Ass'n v. Calcasieu Par. Police Jury*, 422 So.2d 673 (La. App. 3rd Cir. 1982); *Hernandez v. City of Lafayette*, 399 So.2d 1179 (La. App. 3rd Cir. 1981); *Hardy v. Mayor & Bd. of Aldermen*, 348 So.2d 143 (La. App. 3rd Cir. 1977); *Sears Roebuck & Co. v. City of Alexandria*, 155 So.2d 776 (La. App. 3rd Cir. 1963)).

As previously discussed in this opinion, the Louisiana Supreme Court has explained that the presumption of validity and burden of proof to demonstrate arbitrary or capricious action remains on the challenger regardless of the type of zoning at issue (e.g., piecemeal or spot zoning) or an allegation that there had been some mistake in the original zoning. *See Palermo Land Co.*, 561 So.2d at 489-90 (rejecting the "change or mistake" approach outlined in *Dufau v. Par. of Jefferson*, 200 So.2d 335 (La. App. 4th Cir. 1967) and "holding that the same presumption of validity attaches to *all* zoning decisions, and the burden rests on the challenger to overcome this presumption" (emphasis added)).

### Split-Zoning

The LLC raises the issue of the legality of split-zoning. We have found no Louisiana jurisprudence that uses the phrase "split-zoning" or discusses the propriety of it. In support of its contention that the split-zone designation is illegal, the LLC cites to *Nectow v. City of Cambridge*, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928) and *AMG Associates v. Springfield Township*, 65 N.J. 101, 319 A.2d 705, 706 (1974).[3] In the latter case, the New Jersey Supreme Court concluded that the split-zoned property in that matter was "practically unusable," and because the landowner was deprived of *all* reasonable use, the split zoning constituted a taking. *AMG Associates,* 319 A.2d at 700. However, in the matter *sub judice*, the residential portion of the Property has purportedly generated income in the past. Moreover, the record does not support a finding that the LLC has demonstrated a total inability to use the Property in its split-zoned nature.

---

[3] Because *Nectow v. City of Cambridge*, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928) relies on pre-*Lochner* administrative review jurisprudence, we do not find it persuasive in the case *sub judice.*

16

In analyzing split-zoning, we analogize to spot zoning, which is defined as "the singling out of a small parcel of land for a use classification which is different from that of the surrounding area, usually for the benefit of the owner of that parcel, or for the benefit of the owner of some other property in that area, and to the detriment of other owners." *Monte v. Par. of Jefferson ex. rel. Coulon*, 2004-1059, p. 8 (La. App. 5 Cir. 2/15/05), 898 So.2d 506, 511. In *Four States Realty Co.*, the Louisiana Supreme Court explained that spot zoning, like other zoning decisions, "depends upon the particular facts of each case, and on whether the [legislative entity]'s action is properly related to the public health, safety, morals and general welfare, designed to serve the best interest of the community as a whole . . . ." 309 So.2d at 666. That is, certain zoning types are not per se invalid: the arbitrary and capricious standard of review applies no matter the zoning type.

In asserting that the split-zoning is illegal, the LLC also cites *Trustees Under Will of Pomeroy v. Town of Westlake*, 357 So.2d 1299 (La. App. 3rd Cir. 1978), wherein the subject "property serve[d] as a buffer zone of peace and quiet for its neighbors . . . ." In that case the Louisiana Third Circuit Court of Appeal ("Third Circuit") found that the property was "completely unsuited for residential development" and that its only feasible purpose was for industrial purposes. *Id.*, 357 So.2d at 1303. Additionally, the Third Circuit noted that the property owners who opposed the development did not even reside in single family residential zones. *Id.* This is distinguishable from the facts of the matter *sub judice*. The record does not support a finding that the LLC's property is completely unsuited for residential development; and the neighbors opposing the zoning amendment request live in the same residential designation as the residential portion of the LLC's property.

### *Bases of Information for Zoning Decision*

In terms of sources of information for the legislative body in a zoning decision, the Louisiana Supreme Court has held that the concerns of citizens and neighbors are an appropriate consideration:

> Zoning ordinances generally result from a rational decision-making process, and input from members of the community is not uncommon. Nor should it be. Those with zoning authority are elected officials, and as such, they represent the interests of those who elected them. The interests of the public are at the heart of the welfare of a community. Thus, the concerns and desires of the electorate are an appropriate consideration in the decision-making process which exists for their benefit. As this court pointed out in [*State ex rel. Civello v. City of New Orleans*, 154 La. 271, 283, 97 So. 440, 444 (1923)], if a majority of the citizens are dissatisfied with the decisions of the zoning authority, "their recourse is to the ballot—not the courts."

*Palermo Land Co.*, 561 So.2d at 494-95. Louisiana "jurisprudence has long recognized 'expressions of opinion made by citizens to a legislative body serve as a manner by which the legislative body learns the will of the people and determines what benefits the public good.'" *Toups*, 2010-1559, p. 5, 60 So.3d 1215 at 1218 (quoting *King*, 1997-1873, p. 16, 719 So.2d at 419) (holding that the appellate court erred by concluding that the council acted arbitrary and capriciously because its decision was based on opinions from opponents about increases of traffic and crime as opposed to "objective facts").

For example, in *Fleckinger v. Jefferson Parish Council*, the appellant argued that the Jefferson Parish Council's zoning decision could not be based upon the opposition of voters residing in the subject area. 510 So.2d 429, 432 (La. App. 5th Cir. 1987). In response, the Fifth Circuit pointed out that the record did not support a finding that the Jefferson Parish Council relied solely on resident objections. *Id.* The Fifth Circuit found that the Jefferson Parish Council also relied on the basis that the proposed change would violate the "neighborhood norm." *Id.*, 510 So.2d at

432-33. Further, the Fifth Circuit found that the Jefferson Parish Council had considered the impact on the quality of life for the residents in the subject area. *Id.*, 510 So.2d at 432.

### Zoning and Takings

Regarding the landowner's rights in the land, a zoning decision only constitutes a "taking" of the subject property under the just compensation clause of the Fifth Amendment of the United States Constitution if the ordinance denies the owner an economically viable use of his land. *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1197 (5th Cir. 1981) (citations omitted).[4] "The public interest behind the regulation, such as the 'health, safety, morals, or general welfare,' will [. . .] be a factor in the analysis of whether a regulatory taking has occurred." *Robinson v. City of Baton Rouge*, 2013-375, 2015 WL 13522820, at *8 (M.D. La. March 20, 2015) (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 125 (1978)). "However, the Supreme Court [has] identified two situations which qualify as a regulatory taking not requiring a case-specific inquiry into the public interest advanced in support of the restraint: (1) regulations which compel the property owner to suffer a physical invasion of his property and (2) regulations which deny '*all* economically beneficial or productive use of land.'" *Id.* (emphasis added) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992)). "[U]nder Louisiana law, [a taking] occurs when the regulation destroys a major portion of the property's value or eliminates the practical economic uses of the

---

[4] "The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.'" *Robinson v. City of Baton Rouge*, 2013-375, 2015 WL 13522820, at *8 (M.D. La. March 20, 2015) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536, 125 S. Ct. 2074, 2080 (2005)).

property."[5] *Id.* at *11 (quoting *State, Dep't of Soc. Servs. v. City of New Orleans*, 1995-1757 (La. App. 4 Cir. 5/29/96), 676 So. 2d 149, 151; *Layne v. City of Mandeville*, 1993-0046 (La. App. 1 Cir. 12/29/93), 633 So. 2d 608, 611). However, "[a]n unconstitutional taking of private property does not result merely because the owner is unable to develop it to its *maximum* economic potential." *Id.* (emphasis added).

Turning to the facts of the matter *sub judice*, at the April 7, 2022 City Council meeting, the City Council heard only two public comments in favor of the zoning amendment request: one from a representative of the LLC, and a written public comment submitted by a member of the public.

However, the rest of the public comments—either in writing or given orally—were in opposition to the zoning amendment request. Residents and the president of Neighbors First voiced concerns about their property values and explained that they purchased their properties knowing that the abutting area was zoned residential and served as a buffer between the commercial and residential zoning areas. In contrast, they pointed out that the developer purchased the subject land knowing that it was not zoned to be fully commercial. Residents also listed concerns about additional commercial activity keeping their children up at night; the proposed zoning change removing affordable housing for low-income residents

---

[5] The Louisiana Constitution, art. I, § 4 states:

(A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.

(B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.

of the city; a focus on tourism in their neighborhood; and the potential for the Zoning Amendment to affect the culture and historic background of the neighborhood. Regarding the ability to monetize the Property, residents explained that the residential portion of the Property had previously been rented out, thereby generating income, and that a driveway provides access for the residential and commercial portions of the Property. Additionally, a resident voiced concern about the LLC's maintenance of the Property, citing the abandoned-looking nature of the Property and failure to remove storm debris as the LLC's disregard for the neighbors and the community. The LLC's zoning amendment request did not specify what type of commercial endeavor would occur on the Property, and residents voiced concerns about this uncertainty.

Considering the foregoing, "it appears [that] appropriate and well[-]founded concerns for the public could have been the motivation for the zoning [decision]." *See Palermo Land Co.*, 561 So.2d at 491. Additionally, the City Council has heard the opinions of the LLC and the public multiple times over numerous years about the proposed Zoning Amendment, such that its action was deliberate, not hasty. *See Four States Realty Co.*, 309 So.3d at 666. Further, the record shows that there was no "difference of opinion" based on the fact that the City Council voted unanimously against the zoning amendment request (with one councilmember not present for the vote). *See id.* The City Council received information regarding the ability of the Property to generate income in its current zoning because the structures present on the rear residential portion have previously served as residential rentals, so this refutes the LLC's contention that the current designation constitutes a taking of the LLC's property. Thus, our review of the record does not

21

support a finding that the City Council's decision was arbitrary and capricious or lacking disregard for the general welfare.

## DECREE

For the reasons discussed above, we reverse the trial court's October 12, 2022 judgment and render judgment in favor of the New Orleans City Council and the City of New Orleans.

**REVERSED AND RENDERED**